Fourth Division

  December 4, 1997

No. 1-96-3866

THE PEOPLE OF THE STATE OF ILLINOIS,)  APPEAL FROM THE

 )  CIRCUIT COURT OF

Plaintiff-Appellee, )  COOK COUNTY.

 )

v. )

 )

KEVIN HEALY, )  HONORABLE

 )  LORETTA HALL-MORGAN,

Defendant-Appellant.       )  JUDGE PRESIDING. 

JUSTICE WOLFSON delivered the opinion of the court:

On November 22, 1992, Kevin Healy was arrested by the Chicago police department and charged with the murder of Laura Sage.  Between March 16, 1993, and September 17, 1993, a period of 185 days, while Healy was incarcerated awaiting trial, the prosecution requested five continuances in an attempt to complete its crime laboratory work.  During this time, neither Healy nor his attorneys caused, contributed to, or agreed to these continuances.  

Because this delay violated the Illinois Speedy Trial Act, we reverse Healy's conviction and order his discharge.

FACTS

The facts surrounding Sage's murder and Healy's arrest come from the trial testimony of Healy; Assistant State's Attorney Stan Gonsalves, who published Healy's confession to the jury; and Detective Bernard Ryan, who investigated Sage's murder.

In August 1992, Healy picked-up a hitchhiker, Sage, in his van while driving through Cicero.  After talking with Healy for several minutes, Sage offered to have sex with Healy for money.  Healy agreed, had sex with Sage, and paid her $40.

On November 2, 1992, while his wife was staying at the Mayo Clinic in Minnesota, Healy sought Sage's company by driving through Cicero.  When he found Sage, Healy accompanied her to a motel where he paid her again for sex.  At the motel, Healy met Sage's friend, Carnival Bob.  Over the next five days, Healy sought Sage's company in Cicero on several occasions.  Healy gave Sage money for sex, and Sage would use this money for drugs.  Healy saw Sage injecting drugs on several occasions.  During this time, Sage began staying at Healy's house.

On November 7, 1992, while riding in Healy's van, Sage demanded more money for drugs.  When Healy refused, Sage threatened to tell Healy's wife and employer about his solicitation of a prostitute, and threatened to have Carnival Bob burglarize Healy's house.  Sage lied down in the back of Healy's van to rest.  Healy followed Sage, kneeled on top of her, and grabbed her shirt.  Healy testified: "I told her to get out of my truck, to get out of my life."  According to Healy, Sage 

responded: "She said I was a dead man because she had aids [sic]."  Healy then killed Sage by beating her with a flashlight, strangling her with a plastic tie-strap, and stabbing her.

On November 13, 1992, Sage's body was found in the Chicago River.  The Chicago police department began its investigation.  After learning Sage's identity, the police met with several of her friends.  The police learned Sage was last seen with a man named Kevin in a blue van containing Chicago fire department paraphernalia.  On the morning of November 22, 1992, three detectives went to Healy's house.

At Healy's house, the police observed a blue van in the driveway.  Healy answered the door and met the police briefly.  When Healy admitted his acquaintance with Sage, the police told Healy they would like to interview him at Area 1 Police Headquarters "some time in the future."  Healy chose to speak with the police immediately.  After nearly six hours of police interrogation, a failed polygraph test, and eventually an inculpatory statement, Healy was arrested.

On December 16, 1992, the prosecution returned an indictment against Healy, and the court set an arraignment for December 29, 1992.  Healy agreed to extend this date to January 4, 1993.  On that date, Healy filed a motion to substitute judges and asked for a bond hearing, which was set for January 20.

On January 20, 1993, Healy filed his discovery motion.  The court offered the prosecution 45 days to complete discovery.  Healy's attorney suggested the parties return on March 16, 1993, once the prosecution had answered discovery.

On March 16, 1993, the prosecution provided discovery documents and requested blood, saliva, and hair samples from Healy.  Healy's attorney objected for the record and asked to file a written response, but the court granted the prosecution's request.  The prosecution asked for six weeks to finish analyzing these samples.  Defense counsel responded, "I have no problem with any date in May, Judge."  Then, the court spoke with defense counsel:

"THE COURT: Is it a by-agreement date or are you saying you want time to file your motions, too; file what motions would be due on said date?  

I am trying to set a date, counsel, by which they can get the work-up done and that information can be gotten [sic] to you so that their Discovery to you is complete and it would give you time to review your Discovery to prepare your answer and file any pretrial motion that will be heard.  Pick a date that would allow that?

MR. COULES [Defense Attorney]: Any date in May we will be here."

The court ordered the parties to return on May 6, 1993.  No trial date was set.

On May 6, 1993, the prosecution reported the samples had not been analyzed and requested another month to complete its tests.  The court said:

"THE COURT: All right.  What date do we want?

MR. SEXTON [Assistant State's Attorney]: A month date.

THE COURT: Today is what?  The 6th?  Why don't you pick a date the week of June 7.

MR COULES: Any day will be fine, Judge.

THE COURT: Let's make it the 9th.  June 9, status.

MR. COULES: Sure, Judge."  

On June 9, 1993, the prosecution again reported the samples had not been analyzed and requested another month.  The court said:

"THE COURT: Do you have a time frame?

MS. DONOHOE [Assistant State's Attorney]: Judge, I'm hoping to have it within a month.

THE COURT: Okay counsel, do you want to look at your calendar.  The problem is actually a month from now I will not be here.  I will be on vacation.  So maybe the prudent thing is to set it when I come back.  I will be back on the 19th of July.

MR. BAIRD [Defense Attorney]: I don't have any problem with the 19th of July.

THE COURT: Okay.  And maybe we'll have something accomplished by then.

MR. BAIRD: Okay.  Perhaps if the state does have the data they can mail it to me prior.

MS. DONOHOE: We certainly will, Judge.  We have mailed some discovery to counsel between the last date and this date.

THE COURT: Okay.  7-19-93, without, for lab tests and then if we can get that done maybe on that date he can look forward to your answer.  And any motions.

MR. BAIRD: Very good, Judge."

On July 19, 1993, the prosecution again reported the samples had not been analyzed and requested yet another month.  The court spoke with counsel:

"THE COURT: Okay, what I'd like to do perhaps is give this a date where something might be accomplished.  Do you have any requests from the lab understanding their difficulty and layoffs and so forth, what would be a reasonable time?

MS. DONOHOE: I'm going to suggest late August.  I will make every effort--I will explain to them that the Court won't tolerate it.

THE COURT: Right.  Counsel, if you will look at a date convenient to you.  I'll be gone late August, a date towards the end of August.

MR. COULES: Whatever date is convenient to you.

MS. DONOHOE: August 26th."

The court ordered the parties to return on August 26.  The case was set for "status," not trial.

On August 26, 1993, the prosecution had not completed its analysis of the samples and asked the court for another extension.  The court said to defense counsel:

"THE COURT: What date would be convenient for you, Counsel?  I don't believe it takes five months to analyze a blood sample.

MR. BAIRD: I would suggest around September 16th or 17th."

The court ordered the parties to return on September 17.

As of September 17, the critical course of continuances was:

Continuance 
    
Duration

March 16-May 6 51 days

May 6-June 9 34 days

June 9-July 19 40 days

July 19-August 26 38 days

August 26-September 17 22 days

Total: March 16-September 17    185 days

On September 17, 1993, the prosecution produced its lab reports.  The court gave Healy until October 14, 1993, to file any pretrial motions.  Among other motions, Healy filed a motion for discharge under the Speedy Trial Act.  On January 18, 1994, the court denied this motion.  

The court acknowledged, "[defense] counsel is absolutely right and the transcripts have revealed very often the words by agreement are not said very often."  The court mentioned, however, its "strong feeling that there had never been, up to the point counsel had filed his motion, any indication anything was happening except by agreement."  The court repeated, "I never had any indication or thoughts those dates were not by agreement."  

The court noted, "[D]uring that period had there been a concern about the term[,] counsel or the defendant could have opened his mouth and said so."  Further, the court's common law record (half-sheets) indicates that the continuances at issue were "B/A" (by agreement).

The court also denied Healy's motions to quash his arrest and suppress his confession.  At trial, the court refused defense jury instructions relating to second degree murder.
  On August 1, 1996, Healy was convicted of first degree murder.  

On October 23, 1996, after discussing the evidence in aggravation and mitigation, the court sentenced Healy to 30 years imprisonment.  This appeal followed.

DECISION

On appeal, Healy makes five arguments.  First, he contends he was tried in violation of the Speedy Trial Act.  Second, he contends he was detained without probable cause before his arrest.  Third, he contends his confession was involuntary and unintentional as a result of his diagnosed mental disorder.  Fourth, he contends the trial court should have instructed the jury on second degree murder.  Fifth, he contends the trial court ignored mitigating evidence in sentencing.

Because the Speedy Trial Act issue disposes of the entire case, we need not reach the other issues presented by Healy.

The Illinois Speedy Trial Act provides an enforcement mechanism for violations of the constitutional right to a speedy trial.  
See Ill. Const. 1970, art. I, §8; 
People v. Morris
, 3 Ill. 2d 437, 121 N.E.2d 810 (1954).  The statute provides:

"(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***.

* * *

(d) Every person not tried in accordance with *** this Section shall be discharged from custody ***."  725 ILCS 5/103-5 (West 1992).

A delay is "occasioned by" or attributable to the defendant when an affirmative act by the defendant causes or contributes to the delay.  
People v. Turner
, 128 Ill. 2d 540, 539 N.E.2d 1196 (1989); 
People v. Smith
, 251 Ill. App. 3d 839, 623 N.E.2d 857 (1993).  An express agreement to a continuance on the record is an affirmative act attributable to the defendant.  
People v. Reimolds
, 92 Ill. 2d 101, 440 N.E.2d 872 (1982).  

However, mere silence or failure to object to a continuance requested by the prosecution is not an affirmative act attributable to the defendant.  
People v. Cichanski
, 81 Ill. App. 3d 619, 401 N.E.2d 1315 (1980); 
People v. Burchfield
, 62 Ill. App. 3d 754, 379 N.E.2d 375 (1978).  Additionally, mere acquiescence to a date suggested by the court is not an affirmative act attributable to the defendant.  
People v. Beyah
, 67 Ill. 2d 423, 367 N.E.2d 1334 (1977).  See 
People v. Wyatt
, 24 Ill. 2d 151, 180 N.E.2d 478 (1962); 
People v. House
, 10 Ill. 2d 556, 141 N.E.2d 12 (1957).

On appeal, we ordinarily will defer to the trial court's determination that the defendant bears responsibility for the delay absent an abuse of discretion.  
People v. Bowman
, 138 Ill. 2d 131, 561 N.E.2d 633 (1990);
 
People v. Harper
, 279 Ill. App. 3d 801, 665 N.E.2d 474 (1996).  This court is charged with examining the transcript and the common law record to do complete justice to both the prosecution and the defendant.  
People v. Andrade
, 279 Ill. App. 3d 292, 664 N.E.2d 256 (1996); 
People v. Sojak
, 273 Ill. App. 3d 579, 652 N.E.2d 1061 (1995).  We have done that.  

Healy contends the trial court abused its discretion in attributing to him continuances requested by the prosecution.

In 
Turner
, the defendant requested a number of continuances after his arrest.  Eventually, the trial court set a trial date for the defendant and his co-defendants.  During the trial of his co-defendant, the defendant's attorney expressly agreed to a later trial date suggested by the trial court.  

On appeal, the court held the delay was attributable to the defendant.  
Turner
, 128 Ill. 2d at 553-54.  The court found the defendant was not prepared for the original trial date and the trial judge continued the trial in order to accommodate the defendant.  
Turner
, 128 Ill. 2d at 553.  The record showed "the Defendant personally concurs" in setting a new trial date.  
Turner
, 128 Ill. 2d at 552.  Accord 
Smith
, 251 Ill. App. 3d at 843 (the defendant "not only agreed, but affirmatively requested" a new trial date).

In 
Sojak
, a dispute had arisen over certain medical reports compiled by the defendant's doctors.  The State's psychiatrists needed the records in order to complete their evaluation of the defendant.  The matter was continued.  The half-sheet read "by agreement."  Later, the defendant contended he did not agree to the continuance and he could not be charged with it based on a silent record.  We held, based on the transcript of the proceedings and the common law record:

"Thus, the record affirmatively establishes that the defense contributed to the delay in obtaining these records, a delay which in turn necessitated the continuance now complained of here."  
Sojak
, 273 Ill. App. 3d at 583.

In 
Beyah
, the defendant moved for reduction of his bail.  During the bail hearing, as the prosecution began to present evidence of the defendant's prior criminal records, the trial court interrupted:

"THE COURT:  Motion for bond reduction denied.  Go ahead, pick a date.

MR. GOLDBERG [Assistant State's Attorney]: I have got others [prior criminal records].

THE COURT: I haven't got time.  Pick a date.  We'll give him a trial.  I can't talk about bond.  If you're innocent, you walk out.  If you're guilty, you go to jail.

MR. WALTERS [Public Defender]: Set it down for three weeks from today.

THE COURT: How about October 18?

THE DEFENDANT: Can I get one earlier than that?

THE COURT: I can't give you one earlier than that.  Motion Defendant, with subpoenas, October 18."  
Beyah
, 67 Ill. 2d at 426.

The trial court scheduled the trial in three weeks and charged the delay to the defendant.  

On appeal, our supreme court held the trial court could not order the defendant to pick a date and then attribute any delay to the defendant.  
Beyah
, 67 Ill. 2d at 428.  Although the record reflected the trial was set on the defendant's motion, the trial court had initiated the delay.  
Beyah
, 67 Ill. 2d at 426.  Charging the delay to the defendant would be "a mockery of justice" because "the court and the court alone" proposed the continuance even though the defendant took advantage of the court's offer.  
Beyah
, 67 Ill. 2d at 428 (quoting 
Wyatt
, 24 Ill. 2d at 154).   

Similarly, in 
Cichanski
, the defendant requested a trial date and the court suggested a continuance.  The defendant's attorney said the extension was satisfactory.  On appeal, we  held the delay was attributable to the trial court.  
Cichanski
, 81 Ill. App. 3d at 622.  The defendant's silence while a date was set by the court did not contribute to the delay by express agreement.  
Cichanski
, 81 Ill. App. 3d at 622.  Accord: 
Burchfield
, 62 Ill. App. 3d at 756 (a motion for delay by the prosecution cannot become a motion for continuance by the defendant, "merely because the defendant failed to object" to the delay);
 
People v. Smith
, 207 Ill. App. 3d 1072, 1077, 566 N.E.2d 797 (1991)(the statement by defense counsel, "That's fine", in response to a trial date suggested by the prosecution, did not constitute an express agreement to a continuance).  See also 
Wyatt
, 24 Ill. 2d at 54 (delay suggested by the court to unrepresented defendant not attributable to defendant); 
House
, 10 Ill. 2d at 559-60 (delay suggested by the court to unrepresented defendant not attributable to defendant).

 
 In the instant case, Healy's speedy trial argument addresses only the five continuances granted between March 13, 1993, and September 17, 1993.  Any delay occasioned by the defendant will suspend for the time of the delay the period within which the defendant must be tried.  
Smith
, 207 Ill. App. 3d at 1074.  But the speedy trial clock does not start all over.  It merely is suspended.  

Regarding these continuances, the defendant objected to the underlying tests which caused the discovery delays, which in turn led to the continuances requested by the prosecution.  The prosecution never answered ready during this period, and the case was set for status date after status date, but never for trial.  The defendant did nothing to delay the testing process.

The prosecution contends defense counsel's statements to the trial court regarding these continuances were equivocal.  

On March 16, 1993, when the prosecution moved for blood, saliva, and hair samples, the court asked defense counsel if a continuance would be by agreement.  Defense counsel did not agree to a continuance, but instead responded, "Any date in May we will be here."  The court ordered the parties to return on May 6.  

On May 6, 1993, the court asked defense counsel to pick a date, and defense counsel answered, "Any day will be fine, Judge."  When the court chose a date, defense counsel said, "Sure, Judge."  

On June 9, 1993, the court asked defense counsel if he could return on July 19.  Defense counsel responded, "I don't have any problem with the 19th of July."  When the court ordered the parties to return on July 19, defense counsel said, "Very good, Judge."  

On July 19, 1993, when the court asked defense counsel to pick a date at the end of August, defense counsel said, "Whatever date is convenient to you."  The prosecution suggested August 26, and the court agreed.  August 26 marked the 163d day.

On August 26, 1993, the court asked defense counsel to pick another date to return.  Defense counsel said, "I would suggest around September 16th or 17th."  The court ordered the parties to return on September 17.

Equivocal or not, defense counsels' statements should not have been taken as agreement to delay.  They clearly were not.

The period from March 16, 1993, to September 17, 1993, is 185 days.  Unless continuances amounting to 65 days are attributable to Healy, Healy has a viable Speedy Trial Act claim.  After examining these statements again and gauging them against often irreconcilable case law, we conclude the defendant has the better of the argument.  
We distinguish between express agreement (
Turner
 and 
Sojak
) and mere acquiescence (
Beyah
 and 
Burchfield
)
.  Here, defense counsels' conduct never became express agreement.  This is not the "silent record" we found in 
Sojak
.

Defense counsel's statements on May 6 ("Sure, Judge") and June 9 ("Very good, Judge") after the trial court had granted a continuance to the prosecution are indistinguishable from that of defense counsel in 
Smith
 ("That's fine").  We believe these statements are not personal concurrences, like the statements in 
Turner
, but instead are reactions by defense counsel, like those in 
Cichanski
 and 
Burchfield
, to accept the trial court's decision to offer a continuance to the prosecution.
  

We also believe defense counsel did not cross the line between acquiescence and agreement on August 26 when he suggested continuance dates to the court.  Like the trial judge in 
Beyah
,  the trial judge here already had decided to grant a continuance when she said: "What date would be convenient for you, Counsel?"

Admittedly, like the trial court in 
Sojak
, the trial court here noted on the half-sheets all the continuances were "B/A" (by agreement), and the defendant never moved to amend the half-sheets.  Additionally while the trial court conceded the transcript did not indicate any express agreement, the trial court said defense counsel never mentioned any continuances were not by express agreement.  There is nothing in the record to indicate defense counsel saw the half-sheet entries before the motion for discharge was filed.  

The trial judge here on one occasion asked defense counsel whether a continuance was by agreement, and on that occasion did not pursue an answer.  None was given.  Perhaps the trial judge could have tried to obtain an agreement.  But it is the State's job to bring a criminal case to trial.  Here, clearly, there was no sense of urgency while the test results were awaited.  See 
People v. Roberson
, 289 Ill. App. 3d 344, 347, 681 N.E.2d 1069 (1997).

The defendant has no obligation to examine or correct the half-sheets and no obligation to inform the trial court or the prosecution of the expiring term.  In short, Healy had no obligation to bring his own case to trial.  Nor did he have the duty to warn the judge he faced imminent discharge.  

     The question here is whether this court can say with complete confidence:
 "[T]he record does not show any affirmative act by the defendant which contributed to the actual delay of the trial, nor any express agreement by the defendant to a continuance granted on the motion of either the State or the court."  
Reimolds
, 92 Ill. 2d at 107.

We believe the record does not show any affirmative act or agreement by Healy which contributed to the delay.  We reverse the conviction and sentence and order Healy's discharge under the Speedy Trial Act.  

REVERSED.

CERDA, P.J., and McNAMARA, J., concur.