Docket No. 101546.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RONNIE E. CORDELL, Appellee.

*Opinion filed November 30, 2006.*

JUSTICE BURKE delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices Freeman, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

Defendant Ronnie Cordell was convicted in the circuit court of Kankakee County of retail theft (720 ILCS 5/16A–3(a) (West 2002)) and criminal trespass to real property (720 ILCS 5/21–3(a)(2) (West 2002)). On appeal, the appellate court reversed the convictions, finding that defendant's trial counsel was constitutionally ineffective because she failed to argue that defendant's statutory right to a speedy trial had been violated. No. 3–03–1077 (unpublished order under Supreme Court Rule 23). We granted the State's petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, we reverse the judgment of the appellate court.

## BACKGROUND

On January 24, 2002, defendant was arrested and charged with criminal trespass to property following an incident at a Bourbonnais grocery store. Defendant was unable to post bond and remained in custody. On February 15, a grand jury indicted defendant for felony retail theft and criminal trespass to property. The trial court scheduled arraignment for March 5.

On March 5, 2002, the court appointed a public defender to represent defendant, who pled not guilty and demanded a jury trial. The State filed its Supreme Court Rule 412 discovery (188 Ill. 2d R. 412) disclosures, and the trial court gave defendant 30 days in which to file its Rule 413 discovery (134 Ill. 2d R. 413). The following exchange then occurred:

> "THE COURT [to defense counsel]: *** Show 413 [discovery] within 30 days and we'll continue this over to–
>
> THE CLERK: You have a day?
>
> [DEFENSE COUNSEL]: Want to put it on Tuesday? I can always cover if it's not–
>
> THE CLERK: April 16th.
>
> THE COURT: April 16th at 9:30."

On March 6, 2002, a different public defender was assigned to defendant. On April 5, without notifying his new defense counsel, defendant filed a *pro se* motion to suppress evidence due to the insufficiency of statements leading to the charge. On April 16, defense counsel appeared in court and requested a continuance to review defendant's *pro se* motion and for time to file discovery. The court continued the matter to April 26.

On April 26, 2002, the parties appeared for a status hearing. At the hearing, the following exchange took place:

> "[DEFENSE COUNSEL]:*** I think at this point we're going to withdraw that [*pro se*] motion and request this be set for jury.
>
> THE COURT: All right. *** I will give a jury trial date. Let me see, how long do we think this will take? It's–is it 120 days?

\* \* \*

[THE STATE]: I don't think the [Rule 413 discovery] has been filed, but our part won't take long."

Defense counsel then told the court that she had filed her discovery the previous day. The following colloquy then took place:

"THE COURT: *** All right. I'll give you a jury trial date. You have either June 12th or June 11th?

THE CLERK: Right.

[DEFENSE COUNSEL]: Let me just check that June 11th. I know on June 4th we have a number of jury trials already set.

THE COURT: Yeah. I usually set 6 to 10 every day.

(Discussion held off the record.)

THE COURT: June 11th, then, at 10:00 jury trial, sir. Okay."

On June 11, 2002, the case went to trial, and a jury found defendant guilty of retail theft and criminal trespass to real property. Prior to sentencing, defendant filed a *pro se* posttrial motion for new trial that alleged, among other things, that his trial counsel was ineffective for failing to file for dismissal based on the State's violation of section 103–5(a) of the Code of Criminal Procedure of 1963 (the Speedy Trial Act) (725 ILCS 5/103–5(a) (West 2002)). Defendant argued that he was not given a trial within 120 days of his arrest, as is mandated by section 103–5(a). On October 4, the trial court held a hearing on defendant's *pro se* motion and found that defense counsel was not ineffective for failing to file a motion to dismiss on speedy-trial grounds, because there was no violation of section 103–5(a). In making its determination, the trial court stated,

"[T]he case law says certain continuances are on the defense. For instance, when the State filed their 412 in open court on [March 5], the continuance runs from [March 5] to actually either [April 25] or [June 11] to the Defense. So, it doesn't appear there would have been a speedy-trial violation even if you consider the fact that he was in custody."

Defendant was subsequently sentenced.

On appeal, defendant contended that his *pro se* motion raised a viable claim that his statutory right to a speedy trial was violated. The

-3-

State, in response, contended that any delay beyond the 120-day speedy-trial period was attributable to defendant because all of the continuances of the trial were "by agreement." The State maintained that defendant did not object at any point during the proceedings to any of the dates proposed by the court, and therefore agreed to his delayed trial date. The appellate court rejected the State's argument.

Relying on a rule stated in *People v. Vasquez*, 311 Ill. App. 3d 291 (2000), the appellate court found that "defense counsel neither affirmatively requested nor expressly agreed to continuing the case" on each occasion where the trial court set a date for hearing or trial, and thus "did not contribute to this delay in bringing the case to trial." No. 3–03–1077 (unpublished order under Supreme Court Rule 23). Consequently, the appellate court held that the 42-day period from March 6 to April 16, the 46-day period from April 27 to June 11, and the initial 40-day period from January 25 to March 5 were all attributable to the State. The appellate court found that the combined total of 128 days attributable to the State exceeded the 120-day speedy-trial period and therefore reversed the conviction.

ANALYSIS

At issue in this case is whether defendant was denied effective assistance when his defense counsel failed to object to the purported violation of his right to a speedy trial. To determine whether a defendant was denied the effective assistance of counsel, we apply the two-pronged test developed by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by this court in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). To prevail on a claim of ineffective assistance of counsel, the defendant must show both that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced defendant such that he was deprived of a fair trial. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. The failure of counsel to argue a speedy-trial violation cannot satisfy either prong of *Strickland* where there is no lawful basis for arguing a speedy-trial violation. See *People v. Cooksey*, 309 Ill. App. 3d 839, 844 (1999). Accordingly, we must determine whether defendant's speedy-trial rights were violated before we can determine whether counsel was ineffective.

-4-

In Illinois, a defendant has both a constitutional and a statutory right to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8; 725 ILCS 5/103–5(a) (West 2002); see *People v. Crane*, 195 Ill. 2d 42, 48 (2001). Although section 103–5(a) implements the constitutional right to a speedy trial, the statutory right and the constitutional right are not coextensive. *People v. Gooden*, 189 Ill. 2d 209, 217 (2000). Defendant does not argue that his constitutional right to a speedy trial was violated. Therefore, the specific issue on appeal is only whether defendant's statutory right to a speedy trial was violated.

Section 103–5(a) of the Act provides, in relevant part:

> "(a) Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103–5(a) (West 2002).

Prior to 1999, section 103–5(a) did not contain the final sentence that required a defendant to make a written or oral objection to any delay in his trial in order to keep the speedy trial clock from tolling. Under the preamended statute, only affirmative acts by the defendant that caused or contributed to the delay would toll the speedy-trial clock. *People v. Turner*, 128 Ill. 2d 540 (1989). Express agreements to continuances on the record were considered to be affirmative acts attributable to defendants, but mere silences or failures to object to continuances requested by the prosecution or the court were not. *People v. Beyah*, 67 Ill. 2d 423 (1977); *People v. Reimolds*, 92 Ill. 2d 101 (1982); see also *People v. Cichanski*, 81 Ill. App. 3d 619 (1980).

In *People v. Healy*, 293 Ill. App. 3d 684 (1997), these principles led the appellate court to overturn a defendant's murder conviction. In *Healy*, the defendant was incarcerated for a period of 185 days while awaiting trial. *Healy*, 293 Ill. App. 3d at 685. During this time, the prosecution requested and received five continuances in an attempt to complete its crime laboratory work. *Healy*, 293 Ill. App. 3d at 685. When each request for a continuance was presented, the defense counsel offered the following compliant responses: "I have no

problem with any date," "Any day will be fine," "Sure," "I don't have any problem with the 19th of July," and "Whatever date is convenient to you." *Healy*, 293 Ill. App. 3d at 687-88. In response to the court's request for a convenient date for trial, after the State's five continuances, the defense counsel answered, "I would suggest around September 16th or 17th." *Healy*, 293 Ill. App. 3d at 688.

After a total of 185 days of continuances, the State produced its lab reports, and the defendant filed a pretrial motion for discharge under the preamended section 103–5(a). *Healy*, 293 Ill. App. 3d at 689. The trial court denied the defendant's motion for discharge, noting that, while his period of incarceration did exceed 120 days, it had a " 'strong feeling that there had never been, up to the point counsel had filed his motion, any indication anything was happening except by agreement.' " *Healy*, 293 Ill. App. 3d at 689. The case then proceeded to a jury trial and the defendant was convicted of first degree murder. *Healy*, 293 Ill. App. 3d at 689.

On appeal, the defendant argued, among other things, that he was tried in violation of the preamended section 103–5(a). *Healy*, 293 Ill. App. 3d at 685. The *Healy* court reversed the conviction and sentence and ordered the defendant's discharge, finding that the trial court abused its discretion in attributing to the defendant continuances requested by the State. *Healy*, 293 Ill. App. 3d at 690. In its analysis, the *Healy* court noted that the defendant did nothing to delay the testing process. *Healy*, 293 Ill. App. 3d at 692. In addressing the compliant responses given by the defense counsel to the various requests for continuances, the *Healy* court stated,

> "[D]efense counsel's statements should not have been taken as agreement to delay. They clearly were not.
>
> ***
>
> *** We believe these statements are not personal concurrences, *** but instead are reactions by defense counsel *** to accept the trial court's decision to offer a continuance to the prosecution.
>
> We also believe defense counsel did not cross the line between acquiescence and agreement *** when he suggested continuance dates to the court.
>
> * * *

\*\*\* In short, Healy had no obligation to bring his own case to trial." *Healy*, 293 Ill. App. 3d at 693-94.

*Healy* was filed on December 4, 1997. On March 28, 1998, House Bill 3063 was introduced. This bill proposed to amend section 103–5(a) to state that delay should be considered agreed to by a defendant unless he or she objects to the delay by making a written or oral demand for trial. The amendment was enacted as Public Act 90–705 and became effective on January 1, 1999.

Before this court, the State argues that the appellate court erred when it found defendant's acquiescence to the dates proposed by the trial court for arraignment and trial not to be "an affirmative act that results in delay attributable to the defendant." The appellate court, contends the State, ignored the second sentence of section 103–5(a) and applied an outdated analysis, mistakenly focusing on whether defendant requested or agreed to the continuances, and not whether he objected to the delay, as required by section 103–5(a).

According to the State, the plain language of section 103–5(a) should be interpreted to mean that all trial delays are "by agreement," and thus attributable to a defendant, unless a defendant objects to the trial delay on the record and demands a speedy trial. In support of its argument, the State points to the second sentence of section 103–5(a), which was added in the wake of *Healy*. Under the amended statute, the State argues, the speedy-trial clock is tolled not only when a defendant causes a delay, but also when a defendant fails to object to a delay.

A "delay" for purposes of section 103–5(a), the State maintains, is not limited to continuances or postponements of a set trial date, but is simply a term of art used to describe any event that places a trial date beyond the 120-day period provided by section 103–5(a). The State asserts that when a trial court proposes a scheduling change without setting a trial date, or proposes a trial date outside the 120-day period of section 103–5(a), it is "delaying" trial. Under the amended statute, argues the State, such a delay must be objected to by a defendant in order for the 120-day speedy-trial clock not to be tolled.

In response, defendant contends that the plain language of section 103–5(a) requires a defendant to object only to "delays" in the trial,

such as a continuance or a postponement of the trial date, as was the case in *Healy*. The legislative response to *Healy*, argues defendant, was directed only towards "delays" of previously set trial dates. Defendant maintains that no "delay" occurred at either his arraignment on March 5, 2002, or at the status hearing on April 26 when the court set a date for trial.

We now turn to the language of section 103–5(a) to determine the proper construction of "delay." The construction of a statute is a question of law reviewed *de novo*. *In Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000). The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Wooddell*, 219 Ill. 2d 166, 170 (2006). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Wooddell*, 219 Ill. 2d at 170-71. Accordingly, courts should consider the statute in its entirety, keeping in mind the subject it addresses and the legislature's apparent objective in enacting it. *Wooddell*, 219 Ill. 2d at 170.

The plain language of section 103–5(a) states, "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103–5(a) (West 2002). There is nothing in the section to indicate that the "delay" must be of a set trial date. Rather, the section provides only a starting point–the date custody begins, and an ending point–120 days later. Any action by either party or the trial court that moves the trial date outside of that 120-day window qualifies as a delay for purposes of the section. To hold otherwise would contravene the purpose of the 120-day period of the section, which is "to guarantee a speedy trial and not 'to open a new procedural loophole which defense counsel could unconscionably use to obstruct the ends of justice.' " *Gooden*, 189 Ill. 2d at 221, quoting *People v. George*, 71 Ill. App. 3d 932, 934 (1979).

Further, a contrary ruling would handicap courts from even *proposing* trial dates that fall outside the 120-day period, thus removing a portion of the discretion they require for setting a court schedule. See *Kula v. Sitkowski*, 395 Ill. 167, 171 (1946) (trial court is vested with judicial discretion in arrangement of cases on trial calendar and in determining their priority). This ruling does not prohibit a defendant from objecting to a trial date set outside the 120-

day period by trial courts, but rather allows courts the opportunity to *propose* such a date in the interest of efficiency and convenience to both parties and the court, and gives defendants the option of accepting or rejecting the proposed date.

Should a defendant wish to employ section 103–5(a) as a shield against any attempt to place his trial date outside the 120-day period, he is free to do so. To allow section 103–5(a) to be used as a sword after the fact, to defeat a conviction, however, would be contrary our holding in *Gooden* and allow defendants to use a procedural loophole to obstruct justice. Accordingly, in the instant case, when the trial court set a date for trial that fell outside of the 120-day limit of section 103–5(a), it was "delaying" trial and defendant was obligated to object in order to prevent the speedy-trial clock from tolling.

Having determined that the setting of a trial date beyond the 120-day period provided by section 103–5(a) was in fact a "delay," we now turn to the question of whether defendant objected in the manner prescribed by section 103–5(a). Defendant contends that, even if he was required to object to the setting of a status date at his arraignment on March 5, 2002, and to the initial setting of a trial date on April 26, he did so by making an oral demand for trial on both dates. In support of this argument, defendant points to the plain language of section 103–5(a) that requires a defendant to object "to the delay by making a written demand for trial or an oral demand for trial on the record." The State argues that defendant's requests for trial, which occurred before any trial date was announced, do not qualify as "objections to delay."

Defendant did demand trial at his arraignment on March 5, 2002, and again at the status hearing on April 26. On each occasion, however, the demand for trial was made *before* the trial court proposed any trial dates. Defendant voiced no objection to any proposed or actual delay. A simple request for trial, before any "delay" is proposed, is not equivalent to an objection for purposes of section 103–5(a). See *People v. Peco*, 345 Ill. App. 3d 724, 734 (2004) ("while no magic words are required to constitute a speedy-trial demand, there must be some affirmative statement requesting a *speedy* trial in the record" (emphasis added)). As amended, section 103–5(a) places the onus on a defendant to take affirmative action when he becomes aware that his trial is being delayed. To allow basic requests for trial, made before any delay was even proposed, to

-9-

qualify as objections to "delays" not yet proposed would provide defendants with another sword to use after the fact to overturn their convictions. This does not comport with the intention of section 103–5(a).

The appellate court below reached a different conclusion. In its decision, the appellate court relied on *People v. Vasquez*, 311 Ill. App. 3d 291 (2000), specifically, *Vasquez*'s holding that, while an express agreement to a continuance is an affirmative act that results in delay attributable to a defendant, mere silence or failure to object to a delay is not. No. 3–03–1077 (unpublished order under Supreme Court Rule 23). The appellate court's reliance on *Vasquez* for its ruling is misplaced, however, for two reasons.

First, in *Vasquez*, the statute at issue was section 103–5(b) (725 ILCS 5/103–5(b) (West 2002)), which provides for a 160-day time period in which persons on bail or recognizance must be tried. *Vasquez*, 311 Ill. App. 3d at 292. Here, defendant was in custody from the time of his arrest until his trial, and did not fall into the category of persons covered by section 103–5(b). Further, *Vasquez*'s holding, which the appellate court used as a basis for its decision, never addressed the amended statute, in that it espoused the very rules relied on by *Healy* that led the General Assembly to amend section 103–5(a) to add the final sentence requiring a defendant to object to any delay by written or oral demand for trial. *Vasquez*, 311 Ill. App. 3d at 294. As described above, Public Act 90–705 became effective January 1, 1999, more than a year before *Vasquez* was decided.

## CONCLUSION

Defendant did not object to any of the delays in his trial. Therefore, under section 103–5(a), these delays are considered "agreed to" by defendant and his claim of ineffective assistance of counsel fails in light of the fact that any motion for reversal on speedy-trial grounds would have been futile. For the foregoing reasons, we reverse the judgment of the appellate court and affirm the judgment of the circuit court.

> *Appellate court judgment reversed;*
> *circuit court judgment affirmed.*