NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180213-U

NO. 4-18-0213

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 21, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Macon County |
| PRESTON D. HYDE, | ) | No. 17CF737 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | James R. Coryell, |
| | ) | Judge Presiding. |

---

JUSTICE HARRIS delivered the judgment of the court.
Justices Turner and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, finding (1) defendant's speedy-trial rights were not
violated and (2) defendant forfeited his argument that the trial court erred in
imposing consecutive sentences.

¶ 2    A jury found defendant, Preston D. Hyde, guilty of attempt (first-degree murder)

and aggravated discharge of a firearm, and the trial court sentenced him to consecutive terms of

35 and 4 years in prison, respectively. Defendant appeals, arguing (1) his speedy-trial rights were

violated and (2) the court erred in imposing consecutive sentences. We affirm.

¶ 3                              I. BACKGROUND

¶ 4    On June 2, 2017, the State charged defendant with attempt (first-degree murder)

(count I) (720 ILCS 5/8-4, 9-1(a)(1) (West 2016)), aggravated discharge of a firearm (counts II

and III) (*id.* § 24-1.2(a)(2)), and unlawful possession of a weapon by a felon (count IV) (*id.* § 24-

1.1(a)). The State alleged that on April 13, 2017, defendant, "with the intent to kill [the victim], personally discharged a firearm, a handgun, that proximately caused great bodily harm to [the victim], being gunshot wounds to the right forearm, right leg, and right abdomen." Defendant was arrested on May 29, 2017, and he remained in custody until his trial, which commenced on December 6, 2017.

¶ 5        On June 5, 2017, defendant was arraigned, and a preliminary hearing was scheduled for June 21. At the preliminary hearing, the trial court found probable cause defendant committed the charged offenses and continued the matter for a pretrial hearing scheduled for August 14; defendant did not object to the court's scheduling of the pretrial hearing. At the pretrial hearing, defense counsel requested trial be set for September 19, and the court continued the matter for a jury trial on that date.

¶ 6        On September 19, the State filed a "Motion to Continue," stating in support:

> "1. That a bullet recovered from the vehicle which *** defendant is alleged to have shot at was submitted for analysis to the Illinois State Police Crime Lab.
>
> 2. That the bullet is still in the custody of the lab and forensic analysis has yet to be completed.
>
> 3. That the [State] will be prejudiced in the absence of this evidence."

During a hearing held the same day, defense counsel and the court engaged in the following exchange regarding the State's motion to continue:

> "THE COURT: Okay. All right. So[,] show the [State's] Written Motion to Continue on file. Due to the fact the Crime Lab discovery is not yet complete. Objection, Mr. Rueter [(defense counsel)]?

MR. RUETER: Absolutely, sir.

THE COURT: Anything else you want to say, Mr. Rueter?

MR. RUETER: Judge, [defendant is] in custody so—

THE COURT: Okay—

MR. RUETER: We would be objecting.

THE COURT: So[,] show objection, Mr. Rueter. Again, it is the first time it's set. So, show the Motion to Continue is allowed. Today's trial allotment is vacated. The case is continued for [j]ury [t]rial.

* * *

How about October 31, 8:30, Courtroom 6A?

* * *

MR. RUETER: I do know I have another case set that day already, but—

THE COURT: *** Is that as good as any, Mr. Rueter?

MR. RUETER: It is.

THE COURT: October 31, 8:30, Courtroom 6A."

¶ 7 On November 1, 2017, defendant filed a motion for discharge pursuant to section 103-5(a) of the Code of Criminal Procedure of 1963 (speedy-trial statute) (725 ILCS 5/103-5(a) (West 2016)). Defendant maintained that no delays had been attributable to him and, as a result, the speedy-trial period expired on September 26. The State filed a memorandum of law in opposition to defendant's motion, asserting that the delay from June 21 to September 19 was attributable to defendant because he did not object to either the scheduling of the pretrial hearing or the jury trial, nor did he make a written or oral demand for trial. Moreover, the State

- 3 -

maintained, the court granted it an additional 60 days pursuant to section 103-5(c) of the speedy-trial statute (*id.* § 103-5(c)). The court ultimately agreed with the State, ruling as follows:

> "THE COURT: *** As to the [m]otion to [d]ismiss based on the 120 day, the Court does find that the State has used diligence in this matter, and will be granted the additional 60 days in this matter. I think based on that, I don't even have to get to the *Cordell* case as to the timing on that, so the [m]otion to [d]ismiss based on the 120-day rule is denied."

¶ 8      Defendant's jury trial on counts I through III commenced on December 6, 2017. We will discuss only the evidence relevant to the sentencing issue defendant raises on appeal.

¶ 9      The victim testified that defendant shot him four times with a handgun: once in the forearm, twice in the abdomen, and once in the leg. The victim further testified that while being treated at the hospital, the doctors informed him that he would "be stuck with one bullet in [his] side for the rest of [his] life. The other ones came out." No surgery was performed on the victim, and photographs of his injuries were admitted into evidence and published to the jury.

¶ 10      The jury found defendant guilty of all three counts. The jury also found that "defendant personally discharged a firearm that proximately caused great bodily harm ***." The trial court sentenced defendant to 35 years' imprisonment on count I and, after merging count II with count III, 4 years' imprisonment on count III, with the sentences to be served consecutively.

¶ 11      This appeal followed.

¶ 12                                    II. ANALYSIS

¶ 13      On appeal, defendant argues (1) his speedy-trial rights were violated and (2) the trial court erred in imposing consecutive sentences.

¶ 14                A. Defendant's Right to a Speedy Trial Was Not Violated

¶ 15 Defendant argues his convictions must be vacated because the State failed to bring him to trial within 120 days of his arrest, in violation of his statutory right to a speedy trial. In order for defendant to prevail on his speedy-trial claim, he must establish the following three propositions: (1) he occasioned no delay prior to September 19, 2017, the date on which the court granted the State's continuance, (2) the delay caused by the State's continuance was not also attributable to him, and (3) the State's continuance was not granted pursuant to section 103-5(c) of the speedy-trial statute or, alternatively, was erroneously granted pursuant to that section. Since, for the reasons discussed below, defendant is unable to establish the second proposition, his speedy-trial claim necessarily fails.

¶ 16 *1. Standard of Review*

¶ 17 "On appeal, a trial court's determination as to whether a delay is attributable to the defendant is entitled to much deference and should be sustained absent a clear showing that the trial court abused its discretion." (Internal quotation marks omitted.) *People v. Mayo*, 198 Ill. 2d 530, 535, 764 N.E.2d 525, 529 (2002). "However, the ultimate question as to whether [the] defendant's statutory right to a speedy trial has been violated is a question of law subject to *de novo* review." *People v. Pettis*, 2017 IL App (4th) 151006, ¶ 17, 83 N.E.3d 422. Additionally, in light of the fact the trial court in this case only addressed one of the three above-mentioned propositions—whether the State was entitled to a 60-day continuance pursuant to section 103-5(c) of the speedy-trial statute—when ruling on defendant's motion for discharge, we also note the "long-established" and "universally-recognized" rule "that a lower court decision may be sustained on any ground of record[,]" even if not the specific ground relied on by the lower court. *People v. Johnson*, 208 Ill. 2d 118, 129, 803 N.E.2d 442, 449 (2003).

¶ 18 *2. The Right to a Speedy Trial*

¶ 19    Criminal defendants in Illinois have both a constitutional and statutory right to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5(a) (West 2016). "[T]he statutory right and the constitutional right are not coextensive." *People v. Cordell*, 223 Ill. 2d 380, 386, 860 N.E.2d 323, 327 (2006) (citing *People v. Gooden*, 189 Ill. 2d 209, 217, 725 N.E.2d 1248, 1252 (2000)). In this case, defendant argues only that his statutory rights were violated.

¶ 20    Section 103-5(a) of the speedy-trial statute provides, in pertinent part:

> "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***. Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2016).

The second sentence of section 103-5(a) was added in 1999; prior to its addition, only "affirmative acts"—such as an express agreement to a continuance on the record—by a defendant that "caused or contributed to the delay would toll the speedy-trial clock." *Cordell*, 223 Ill. 2d at 386. Thus, while "[e]xpress agreements to continuances on the record were considered to be affirmative acts attributable to defendants, *** mere silences or failures to object to continuances requested by the prosecution or the court were not." *Id.*

¶ 21    The principles recited above led to the vacatur of a defendant's first-degree-murder conviction in *People v. Healy*, 293 Ill. App. 3d 684, 688 N.E.2d 786 (1997). In response to the *Healy* decision, the legislature amended section 103-5(a) "to state that delay should be considered agreed to by a defendant unless he or she objects to the delay *by making a written or*

*oral demand for trial*." (Emphasis added.) *Cordell*, 223 Ill. 2d at 388. In amending the statute, our legislature intended to close a "procedural loophole which defense counsel could unconscionably use to obstruct the ends of justice" by using the statute "as a sword after the fact, to defeat a conviction," rather than "as a shield against any attempt to place his trial date outside the 120-day window[.]" *Id.* at 390. "As amended, section 103-5(a) places the onus on a defendant to take affirmative action when he becomes aware that his trial is being delayed." *Id.* at 391. "[W]hile no magic words are required to constitute a speedy-trial demand, there must be some affirmative statement requesting a *speedy* trial in the record[.]" (Emphasis in original.) *Id.* (quoting *People v. Peco*, 345 Ill. App. 3d 724, 734, 803 N.E.2d 561, 569 (2004)).

¶ 22        In the instant case, the State argues, in part, that defendant's speedy-trial claim is meritless because defendant failed to object to its continuance in the specific manner prescribed by section 103-5(a), which, according to the State, served to toll the speedy-trial period. Defendant asserts the State waived this argument by stating in its memorandum of law in opposition to his motion for discharge, "[d]efendant objected to two continuances—from September 19 to October 31, and October 31 to November 1." Without addressing the merits of defendant's assertion of waiver, we note the "long-recognized" legal principle that "the responsibility of a reviewing court for a just result *** may sometimes override the considerations of waiver that stem from the adversarial nature of our system." (Internal quotation marks omitted.) *People v. Wilson*, 155 Ill. 2d 374, 379, 614 N.E.2d 1227, 1229 (1993). Given the clear concern of both our legislature and supreme court with allowing defendants to use section 103-5(a) as a sword, after the fact, "to unconscionably *** obstruct the ends of justice[,]" we believe our responsibility for a just result in the instant case overrides the considerations of any alleged waiver by the State. *Cordell*, 223 Ill. 2d at 390.

¶ 23   Turning to the merits, the State relies on *People v. Murray*, 379 Ill. App. 3d 153, 882 N.E.2d 1225 (2008), in support of its argument that the relevant delay was attributable to defendant due to his insufficient objection to the requested continuance.

¶ 24   In *Murray*, the Second District analyzed what constituted an "oral demand for trial" for purposes of section 103-5(a). *Id.* at 160. The *Murray* court began its analysis by noting that "while no magic words are required to constitute a speedy-trial demand, there must be some affirmative statement requesting a speedy trial, and the demand should not be disguised in ambiguous language." *Id.* Applying this rule to the facts before it, the Second District determined that when defense counsel, at certain hearings, "objected to the delays, stated that she was ready for trial, and *specifically stated her desire that the delay be attributed to the State*—language that would be used only in reference to [the defendant's] speedy-trial right"—defendant sufficiently objected for purposes of section 103-5(a). (Emphasis added.) *Id.* at 161. Of particular note, the court also found that an objection made at a separate hearing, where substitute counsel appeared, was insufficient for purposes of the statute. *Id.* Specifically, it found that when defense counsel "stated a readiness for trial and objected to the delay, but did not specifically ask for trial or use language that would reference the speedy-trial statute[,]" the requirements of section 103-5(a) had not been satisfied. *Id.* After also noting that the trial court made no finding "that the objection rose to the level of a speedy-trial demand[,]" the *Murray* court concluded by stating: "In the absence of language clearly showing an intent to invoke the speedy-trial statute and without a specific finding by the trial court, there is not an affirmative and unambiguous request for a speedy trial on the record." *Id.*

¶ 25   Here, the following relevant exchange occurred between defense counsel and the trial court regarding the State's September 19 request for a continuance:

"THE COURT: Okay. All right. So[,] show the [State's] Written Motion to Continue on file. Due to the fact the Crime Lab discovery is not yet complete. Objection, Mr. Rueter [(defense counsel)]?

MR. RUETER: Absolutely, sir.

THE COURT: Anything else you want to say, Mr. Rueter?

MR. RUETER: Judge, [defendant is] in custody so—

THE COURT: Okay—

MR. RUETER: We would be objecting.

THE COURT: So[,] show objection, Mr. Rueter. Again, it is the first time it's set. So, show the Motion to Continue is allowed. Today's trial allotment is vacated. The case is continued for [j]ury [t]rial.

* * *

How about October 31, 8:30, Courtroom 6A?

* * *

MR. RUETER: I do know I have another case set that day already, but—

THE COURT: *** Is that as good as any, Mr. Rueter?

MR. RUETER: It is.

THE COURT: October 31, 8:30, Courtroom 6A."

¶ 26    According to defendant, applying the rationale of *Murray* to this exchange demonstrates that his objection was sufficient for purposes of section 103-5(a). Defendant argues his objection amounted to an oral demand for trial because "defense counsel objected to the State's requested continuance and explained that the objection was being made because [defendant] was in custody."

- 9 -

¶ 27        Here, unlike at the court appearances in *Murray* where defense counsel not only

objected to the delays, but also "specifically stated her desire that the delay be attributed to the

State[,]" defense counsel made no affirmative request or demand regarding defendant's speedy-

trial rights. Instead, similar to substitute counsel's response in *Murray*, defense counsel here,

after being prompted by the trial court, merely explained he was objecting because defendant

was in custody. Defense counsel did not unambiguously demand trial, nor did he request that the

delay be attributed to the State. Moreover, defendant fails to point to anything in the record

indicating the trial court found defense counsel's objection constituted a speedy-trial demand.

See *id.* ("In the absence of language clearly showing an intent to invoke the speedy-trial statute

and without a specific finding by the trial court, there is not an affirmative and unambiguous

request for a speedy trial on the record.").

¶ 28        Accordingly, we decline to find that defense counsel, by simply stating—and only

after being prompted by the trial court—he was objecting to the State's continuance because

defendant was in custody, sufficiently made "an oral demand for trial on the record" for purposes

of section 103-5(a). 725 ILCS 5/103-5(a) (West 2016). To hold otherwise on these facts "would

provide defendants with another sword to use after the fact to overturn their convictions"

(*Cordell*, 223 Ill. 2d at 392), and would be contrary to the purpose of section 103-5(a), which is

"to guarantee a speedy trial and not to open a new procedural loophole which defense counsel

could unconscionably use to obstruct the ends of justice." (Internal quotation marks omitted.)

*Gooden*, 189 Ill. 2d at 221.

¶ 29                        B. The Imposition of Consecutive Sentences

¶ 30        Next, defendant argues the trial court erred in imposing consecutive sentences.

Specifically, defendant contends the court erred because it "set forth no legal justification for the

imposition of consecutive sentences" as evidenced by its failure to make an express finding that his conduct caused "severe bodily harm." The State argues, in part, defendant forfeited this argument because, although he challenged the imposition of consecutive sentences in the trial court, he did not do so on the basis he now raises on appeal. In response, defendant acknowledges his argument "was not preserved by defense counsel" but nonetheless requests this court to address it under the first prong of the plain-error doctrine.

¶ 31        The plain-error doctrine is a "narrow and limited exception" allowing courts of review to address forfeited claims. *People v. Hillier*, 237 Ill. 2d 539, 546, 931 N.E.2d 1184, 1188 (2010). To obtain plain-error review in the sentencing context, a defendant must show that "a clear or obvious error occurred" and "the evidence at the sentencing hearing was closely balanced ***." *Id.* The burden of persuasion remains with the defendant under both prongs of the doctrine. *Id.* If this burden is not met, the procedural default must be honored. *Id.* "The ultimate question of whether a forfeited claim is reviewable as plain error is a question of law that is reviewed *de novo*." *People v. Johnson*, 238 Ill. 2d 478, 485, 939 N.E.2d 475, 480 (2010).

¶ 32        Here, because we find the evidence was not closely balanced, we need not address defendant's argument that clear or obvious error occurred. See *People v. White*, 2011 IL 109689, ¶ 148, 956 N.E.2d 379 ("Where the only basis proffered for plain-error review is a claim that the evidence is closely balanced, an assessment of the impact of an alleged evidentiary error is readily made after reading the record. When it is clear that the alleged error would not have affected the outcome of the case, a court of review need not engage in the meaningless endeavor of determining whether error occurred."). Defendant argues that the evidence presented as to the severity of the victim's injuries was closely balanced by pointing only to a portion of the victim's testimony at trial in which he stated: "They basically did—they did X-rays. They did X-rays,

cleaned the wounds up. Basically told me I am going to be stuck with one bullet in my side for the rest of my life. The other ones came out." Thus, according to defendant, the victim's injuries were merely "wounds which were cleaned up at the hospital without the need for surgery or even any mention of stitches ***." However, as defendant fails to make any further attempt to explain how multiple gunshot wounds—including one where the bullet was permanently lodged inside of the victim's body—do not amount to severe bodily injury, we find he has failed to establish that the evidence was closely balanced. Accordingly, we must honor his forfeiture. See *Hillier*, 237 Ill. 2d at 546.

¶ 33                                                    III. CONCLUSION

¶ 34              For the reasons stated, we affirm the trial court's judgment.

¶ 35              Affirmed.