# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Kohler*, 2012 IL App (2d) 100513

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff, v. MICHAEL D. KOHLER, Defendant-Appellant (The Village of Long Grove, Plaintiff-Appellee). |
| District & No. | Second District<br>Docket No. 2-10-0513 |
| Filed | April 12, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's convictions for violations of a village's driving under the influence of alcohol ordinances were vacated where the village failed to present any viable arguments that defendant's speedy-trial demand was ineffective and the village failed to bring defendant to trial within the 160-day speedy-trial term. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 07-DT-2152; the Hon. Joseph R. Waldeck, Judge, presiding. |
| Judgment | Vacated. |

| Counsel on Appeal | Thomas A. Lilien and Bruce Kirkham, both of State Appellate Defender's Office, of Elgin, for appellant. |
| | |
| | Joel D. Gingiss, of Smith & LaLuzerne, Ltd., of Waukegan, for appellee. |
| | |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. Justices McLaren and Burke concurred in the judgment and opinion. |

## OPINION

¶ 1      Defendant, Michael D. Kohler, appeals his convictions, following a stipulated bench trial, of driving under the influence of alcohol under the ordinances of the Village of Long Grove (the Village). Defendant argues that the Village did not bring him to trial within the 160-day time period specified in section 103-5(b) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5(b) (West 2008)). For the reasons that follow, we agree and vacate defendant's convictions.

¶ 2      We summarize the evidence appearing in the record. We note that the parties included transcripts from two hearings in this matter: the hearing on defendant's motion to dismiss based on a violation of the speedy-trial statute (725 ILCS 5/103-5(b) (West 2008)), and the stipulated bench trial. To make up for the lack of other transcripts, the parties filed an agreed statement of facts signed by all attorneys who participated in this matter, apparently pursuant to Illinois Supreme Court Rule 323(d) (eff. Dec. 13, 2005). We also use the agreed statement of facts in setting forth the relevant facts surrounding this appeal.

¶ 3      On June 29, 2007, defendant was issued two citations for driving under the influence of alcohol. The citations were made out by a deputy of the Lake County sheriff's department. On each citation, the deputy checked the box indicating that the "City/Village of" would be the charging entity and completed the form by writing in "Long Grove" as the village. Despite filling in Long Grove as the charging entity, the deputy also noted that defendant was being charged with violations of sections 11-501(a)(1) and 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(1), (a)(2) (West 2006)). The citation form had boxes to indicate whether defendant was being charged with a violation of state law or a local ordinance. These boxes were left unchecked. Last, the deputy indicated that the citations had been issued pursuant to an accident involving property damage and that the accident had occurred on westbound Lake-Cook Road at Old Hicks (Route 53).

¶ 4      On July 25, 2007, defendant was arraigned, and on August 17, 2007, defendant appeared at a hearing for status of counsel. At both of those hearings, the prosecution was represented by assistant State's Attorneys and not by a Village attorney. On September 21, 2007, defendant did not appear in court. On October 26, 2007, the trial court issued a warrant for

defendant's arrest.

¶ 5        On September 27, 2008, defendant was arrested on the outstanding warrant. On September 28, 2008, defendant appeared for a bond hearing. At the bond hearing, the prosecution was represented by an assistant State's Attorney and not by a Village attorney. Also at the bond hearing, the trial court appointed the public defender to represent defendant. The trial court further ordered defendant released from custody on a personal recognizance bond. The assistant public defender representing defendant filed a demand for a speedy trial on that date, serving a copy of the demand on the attorney representing the prosecution at that time, the assistant State's Attorney.

¶ 6        On October 3, 2008, defendant appeared for arraignment, but the case was continued because the Village's prosecutor did not have a file on defendant's case. The case was continued without defendant's agreement. On November 7, 2008, defendant's attorney requested additional discovery, and the case was continued on defendant's motion. The case was set for pretrial statuses on December 12, 2008, January 16, 2009, and February 13, 2009. On December 12 and February 13, defendant was personally present; on January 16, defendant was not personally present, because the trial court had waived his attendance at that hearing. Further, defendant did not expressly agree to continue the case before January 16; on January 16, the case was continued on defendant's motion.

¶ 7        On February 13, 2009, the case was set for trial during the week of March 30, 2009, with trial priority to be determined on March 27, 2009. On February 13, 2009, defendant's counsel filed another written speedy-trial demand.

¶ 8        On March 6, 2009, the Village presented a motion to continue the March 30 trial date. The trial court granted the Village's motion to continue, over defendant's objection. The matter was set for trial on the week of April 7, 2009, with a trial priority date of April 3, 2009. On the April 3 trial priority date, both defendant and the Village answered ready for trial, and the matter was continued for trial as scheduled, to April 7.

¶ 9        On April 7, defense counsel appeared, but defendant was absent. Counsel informed the trial court that, earlier that day, she had been contacted by defendant, who told her that he was ill and could not attend trial on that date. Counsel further related that she had called the Village's prosecutor and informed him about defendant's illness. Counsel then moved to continue the trial date. The trial court granted defendant's motion to continue the trial as a result of his illness and set the matter for a trial priority date of May 8, 2009.

¶ 10        On the May 8, 2009, trial priority date, the parties answered that they were ready for trial. The trial court set the matter for trial on May 19, 2009. On May 19, the parties answered ready for trial, but there were no judges available to hear the trial. The trial court, on its own motion, continued the matter for trial until June 30, 2009. The June 30 date turned into a repetition of the May 19 date: the parties answered ready, but no judge was available to hear the trial. The trial court, again on its own motion, continued the matter for trial until August 4, 2009.

¶ 11        On August 4, 2009, the parties again answered ready for trial, and, once again, the trial court continued the matter due to the unavailability of a judge to hear the trial. This time, the trial court set the matter for trial on August 18, 2009. Defendant expressly objected to the

continuance.

¶ 12    On August 18, 2009, defendant filed a motion to dismiss, alleging that the speedy-trial statute had been violated. The matter was continued, on defendant's motion, until October 27, 2009, when the trial court heard argument on the motion. The court denied defendant's motion, giving two grounds in explanation. First, the court held that the first written demand for a speedy trial was not served on the Village, because it was served on one of the assistant State's Attorneys covering the call rather than the Village's attorney. Second, the court held that defendant agreed to a trial date that was outside of the 160-day speedy-trial limit, relying on the reasoning in *People v. Hampton*, 394 Ill. App. 3d 683 (2009) (which held that, in the context of section 103-5(a) of the Code (725 ILCS 5/103-5(a) (West 2008)), if a defendant acquiesced to a date outside of the speedy-trial limit, the defendant waived his speedy-trial claim). On November 25, 2009, defendant filed a motion to reconsider, and, on March 16, 2010, the trial court denied the motion.

¶ 13    On March 16, 2010, defendant filed another speedy trial demand, and the trial court set March 30, 2010, as the trial date. On March 23, 2010, the parties appeared before the trial court on defendant's motion to strike the March 30 trial date, and the trial court set the matter for trial on April 27, 2010.

¶ 14    On April 27, 2010, the matter finally moved to trial. Defendant waived a jury and agreed to a bench trial. The parties then proceeded to a stipulated bench trial. The Village stated that the deputy was acting on the Village's behalf when the deputy responded to the traffic accident involving defendant. The deputy had defendant attempt field sobriety tests, which defendant failed, and, using a Breathalyzer, the deputy determined that defendant's blood alcohol content was 0.22. The trial court found defendant guilty of the two counts of driving under the influence of alcohol. On May 18, 2010, defendant was sentenced to a 12-month term of conditional discharge, 100 hours of public service, 180 days in the county jail stayed pending compliance with the other terms, an $800 fine, and court costs. Defendant timely appeals.

¶ 15    On appeal, defendant argues that he was not brought to trial within the 160-day time period of section 103-5(b) of the Code. Defendant further contends that, as a result, his conviction should be vacated. The State counters that defendant's first speedy-trial demand was ineffective because he was still in custody when it was made and it was not served on the Village's prosecutor, and defendant's absence from the scheduled April 7, 2009, hearing resulted in the waiver of his speedy-trial demand, notwithstanding the fact that the trial court accepted the reason for defendant's absence and continued the trial date on defendant's motion. Regarding the second speedy-trial demand, the State argues that it was ineffective because defendant did not record on it his previous speedy-trial demand. For the reasons that follow, we agree with defendant's argument.

¶ 16    As an initial matter, we consider our standard of review. Generally, we review a trial court's decision on a speedy-trial challenge for an abuse of discretion; absent an abuse of discretion, the trial court's determination will be upheld. *People v. Buford*, 374 Ill. App. 3d 369, 372 (2007). Defendant contends that, in a case in which there are no disputed factual issues and the issues on appeal present purely legal questions, such as the adequacy of the

service of a speedy-trial demand or whether a defendant's excused absence from the trial court due to illness operates to waive his speedy-trial rights, our review should be *de novo*. *People v. Bonds*, 401 Ill. App. 3d 668, 671 (2010). We do not need to decide whether our review will proceed under the abuse-of-discretion standard or the *de novo* standard, because under either standard of review the result is the same.

¶ 17 The record shows that, on September 28, 2008, defendant first filed a speedy-trial demand. We note that this hearing occurred after defendant failed to show up at an August 2007 hearing, resulting in the issuance of a warrant and the forfeiture of his original bond. There is no adverse impact to defendant's subsequent speedy-trial demand, notwithstanding the provision in section 103-5(b) of the Code that states: "The defendant's failure to appear for any court date set by the court operates to waive the defendant's demand for trial made under this subsection." 725 ILCS 5/103-5(b) (West 2008). Here, the absence was before defendant filed his speedy-trial demand, and an absence before a speedy-trial demand is made does not operate to waive subsequent speedy-trial demands. *People v. Sitkowski*, 382 Ill. App. 3d 1072, 1076 (2008). Assuming the speedy-trial period began running on September 28, 2008, it ran until November 7, 2008, when it was first tolled on defendant's motion. This period constituted 40 days.

¶ 18 On December 12, 2008, the speedy-trial period resumed, and it ran until January 16, 2009, when the matter was continued on defendant's motion. The number of days from December 12 to January 16 was 35. On February 13, the speedy-trial term resumed, and on that date, the matter was set for a March 30, 2009, trial, which would have been day 120 of the speedy-trial period. However, on March 6, 2009, the State moved to continue the trial, and the motion was granted and the trial date set for April 7, 2009. From February 13 to April 7 was 53 days, and April 7 was day 128 of the speedy-trial term.

¶ 19 On April 7, 2009, on defendant's motion, the trial court continued the matter to May 8, 2009, for setting of trial, and, on that date, the matter was set for trial on May 19, 2009. The speedy-trial term recommenced on May 19, 2009, at 128 days. The trial court set the next trial date for June 30, 2009, outside of the speedy-trial term. Defendant did not expressly object. Arguably, according to *Hampton*, 394 Ill. App. 3d at 689, defendant was required to object to prevent the tolling of the speedy-trial term. However, this court, in *Village of Mundelein v. Bogachev*, 2011 IL App (2d) 100346, ¶ 26, held that, while under section 103-5(a) a defendant must object when the trial court sets a trial date outside of the statutory period, there is no equivalent duty on a defendant who is proceeding under section 103-5(b).[1] In other words, defendant did not have to object at the May 19, 2009, hearing that the trial date of June 30 was outside of the speedy-trial term. *Bogachev*, 2011 IL App (2d) 100346, ¶ 26. We agree with and follow *Bogachev*. On June 30, the matter was continued until August 4, 2009. On August 4, however, the matter was continued to August 18 over

---

[1]The *Bogachev* court reasoned that the legislature had added the duty to object when it amended section 103-5(a), but it did not add similar language to section 103-5(b). Thus, the court could not interpret section 103-5(b) to require the defendant to object, because that would be amending the statute through judicial fiat.

defendant's express objection. On August 18, defendant filed a motion to dismiss for the Village's violation of section 103-5(b). Because defendant was proceeding under section 103-5(b), he was not required to object to the court's setting the trial date outside of the speedy-trial term, and the speedy-trial count stood at 170 days as of June 30. June 30 to August 18 was 49 more days, so on August 18 the speedy-trial term stood at 219 days, clearly beyond the statutory period of 160 days.

¶ 20    According to our count, as of August 18, 2009, the Village had surpassed the speedy-trial term by 59 days without bringing defendant to trial. Absent one of the Village's arguments succeeding, it is clear that the trial court erroneously denied defendant's motion (under either a *de novo* or an abuse-of-discretion standard of review). Accordingly, we proceed to consider the Village's first contention: that defendant's first speedy-trial demand was made while defendant was in custody.

¶ 21    The Village argues that on September 28, 2008, when defendant filed his first speedy-trial demand, he was in custody. The Village notes that, on September 27, defendant was arrested on the bond forfeiture warrant issued in 2007. The next day, defendant appeared in court for a bond hearing. At that hearing, defendant tendered his speedy-trial demand and was also ordered to be released on a personal recognizance bond. According to the Village, defendant was in custody until he walked out of the county jail sometime after the bond hearing ended. The Village reasons that "custody" means that a defendant is deprived of his freedom in any significant way, citing *People v. Melock*, 149 Ill. 2d 423, 429 (1992) (discussing "custody" in the context of *Miranda* warnings). Because defendant needed further processing by the jail before he could leave, the Village argues he remained in custody until he physically left the premises, and this occurred only after the hearing had concluded. The Village then argues that, pursuant to *People v. Garrett*, 136 Ill. 2d 318, 329-30 (1990), a defendant's demand for a speedy trial made while he or she is in custody is premature. The Village continues that, because defendant remained in custody until he literally walked out of the jail, his speedy-trial demand was made while he was in custody and was thus premature. As a result, the Village concludes, the September 28 speedy-trial demand was ineffective and did not start the speedy-trial period.

¶ 22    Defendant argues that following the Village's interpretation would create an "impermissible impediment" to a defendant's speedy-trial rights. Defendant notes that, because the trial court ordered defendant released on recognizance, there was no question that defendant would be released directly after the bond hearing. In contrast, if the trial court had ordered a cash bond, where there might have been a question about his ability to make bail, it would have been reasonable to wait until after defendant had posted bond before accepting the speedy-trial demand. Defendant concludes that, because the speedy-trial statute should be liberally construed in favor of a defendant (citing *People v. Ingram*, 357 Ill. App. 3d 228, 229 (2005)), its liberal construction should defeat the Village's argument.

¶ 23    We agree with defendant that the Village's argument cannot stand, but we disagree as to the reasoning. The Village analogizes cases involving custody or arrest for purposes of determining a *Miranda* violation. We are not convinced that this is an apt analogy. We also note that the speedy-trial provisions of the Code are to be liberally construed in favor of a defendant because they were enacted to avoid infringements of the defendant's constitutional

speedy-trial rights. *Ingram*, 357 Ill. App. 3d at 229-30. As a result, we perceive merit to defendant's concern that the Village's view would impede a defendant's exercise of his or her speedy-trial rights. However, because defendant was released from incarceration on bond, the chief evil combated by the statutory speedy-trial provisions, that of wrongful incarceration, is lessened in this case. See *Ingram*, 357 Ill. App. 3d at 230 (the evil to be prevented by the speedy-trial statute is wrongful incarceration).

¶ 24 That said, the Village's view would burden the implementation of a defendant's speedy-trial rights, and it would introduce elements of chance and fortuity into deciding the effect of a speedy-trial demand. In our view, the better course is exemplified in the reasoning of *In re Marriage of Nettleton*, 348 Ill. App. 3d 961, 967 (2004). In that case, the final order and notice of appeal were entered on the same day, but the notice of appeal was time stamped a few minutes before the final order. *Marriage of Nettleton*, 348 Ill. App. 3d at 966. The appellate court determined that it had jurisdiction notwithstanding the apparent out-of-sequence time stamps, reasoning that to follow the time stamps would subject the court's jurisdiction to the foibles of the overburdened deputy clerk who was stamping the documents rather than to when the documents were filed. *Marriage of Nettleton*, 348 Ill. App. 3d at 967. The court held that the final order was entered on March 20 and the notice of appeal was filed on March 20, so the notice of appeal was filed within the 30-day time limit of Illinois Supreme Court Rule 303 (eff. Feb. 1, 1994). *Marriage of Nettleton*, 348 Ill. App. 3d at 966-67.

¶ 25 We find the reasoning of *Marriage of Nettleton* to be very instructive. In light of our liberal construction of the speedy-trial provisions of the Code and the fact that the recognizance bond of September 28 meant that defendant was to be released immediately, we determine that defendant was released from custody on September 28, the speedy-trial demand was filed on September 28, and the speedy-trial demand effectively began the speedy-trial term under section 103-5(b) on that date.

¶ 26 We can also approach the custody issue from a different angle (and outside of the Village's *Miranda*-based analogy). In *People v. Campa*, 217 Ill. 2d 243, 252 (2005), the issue centered around determining which provision of the speedy-trial statute was in effect based on whether the defendant was in custody. In *Campa*, the supreme court defined "custody" as something broader than confinement, encompassing lesser forms of restraint than confinement. *Campa*, 217 Ill. 2d at 254. In that case, the defendant was deemed to be in custody when he was reporting to the Day Reporting Center program. *Campa*, 217 Ill. 2d at 255. At the Day Reporting Center program, defendant was expected to attend sessions Monday through Friday, lasting from 8:30 a.m. to 1:30 p.m. Failure to report would result in a return to incarceration in the Cook County department of corrections. *Campa*, 217 Ill. 2d at 246. The supreme court reasoned that the defendant was in custody because he had significant restraints on his liberty. *Campa*, 217 Ill. 2d at 255.

¶ 27 Here, by contrast, defendant attended a bond hearing at which he was released on recognizance. In other words, at the bond hearing, the restraints on defendant's liberty were almost completely removed when the court ordered that he be released on recognizance. (Defendant was required to attend court hearings as a result of his recognizance bond–this was the remaining restriction on his liberty; otherwise, defendant was free to attend to his

-7-

personal business with no restrictions on his liberty.) *Campa* suggests, then, that because the restrictions on defendant's liberty were reduced to almost nothing, he no longer was in custody. If defendant were not in custody, then his speedy-trial demand was tendered at an appropriate time.

¶ 28    The Village's timing argument fares no better against *Campa*. The Village's argument would be that defendant's speedy-trial demand was premature because defendant tendered it before the trial court placed him on a recognizance bond and removed the restrictions on his liberty. However, the upshot of the bond hearing was to remove those restrictions and place him on recognizance. It is clear that defendant was being restored to liberty at the September 28 hearing. His speedy-trial demand tendered on that date, viewed in light of the totality of the circumstances surrounding it, cannot be said to have been premature.

¶ 29    We further note that *Garrett*, upon which the Village relies, dealt with whether a speedy-trial demand, entered at the defendant's arraignment while he was in custody, activated the speedy-trial provisions of section 103-5(b) when the defendant made bail about two months later. *Garrett*, 136 Ill. 2d at 321. Here, by contrast, the bail transaction occurred the same day as defendant's arraignment and the speedy-trial demand. Thus, there was no question in this case of the speedy-trial demand being buried in the court files by the passing of time and then defendant using it as a sword to get his charges dismissed, instead of as a shield against wrongful incarceration. *Garrett*, therefore, is inapposite. As a result, we reject the Village's contention that defendant's speedy-trial demand was prematurely filed while he was in custody.

¶ 30    Next, the Village claims that it was not properly served with the September 28 speedy-trial demand. The Village acknowledges, and the trial court determined, that the September 28 speedy-trial demand was served on the assistant State's Attorney who was covering the call on that date. The Village argues that, despite the service on the assistant State's Attorney, the demand was never served on the Village prosecutor. The Village also notes that, in violation of the local rules, there is no proof of service in the court file related to the September 28 speedy-trial demand, and it argues that the September 28 speedy-trial demand was thus of no effect. We disagree.

¶ 31    We first note that the Village has forfeited this contention by failing to cite any authority support its claim that service on the assistant State's Attorney should not be deemed as service on the Village's prosecutor. Ill. S. Ct. R. 341(h)(7) (eff. July 1, 2008); *People v. Prinzing*, 389 Ill. App. 3d 923, 937 (2009). We further note that, while the Village cites to the local rules of the circuit court, it does not actually make any argument based on those rules. As a result, this contention is forfeited.

¶ 32    Even in the absence of forfeiture, we would reject the Village's argument. The record shows that the State's Attorney's office stepped up for the Village repeatedly during the case, especially during the initial hearings when the State represented the Village in three of five hearings. We note that section 16-102(c) of the Illinois Vehicle Code (625 ILCS 5/16-102(c) (West 2008)) allows the State's Attorney to authorize with written permission a municipality's attorney to prosecute a violation. Section 16-102(c), however, does not divest the State's Attorney of his or her right to appear in the case even when the municipal

prosecutor has been granted written permission to try the case. Thus, we conclude that the assistant State's Attorney, by stepping up when the Village prosecutor was not present, was representing the Village's interests such that service on the assistant State's Attorney was sufficient to stand as service on the Village's prosecutor. Accordingly, we reject the Village's argument and hold that the trial court erred in accepting this argument.

¶ 33 Finally, we are impelled to comment on the Village's argument on this point. While the citations were marked in a manner designating the Village as the prosecuting authority, we do not believe that a police officer in the field chooses who will prosecute a matter with the tick of his or her pen. Further, because the assistant State's Attorney stood in for the prosecution upon the case being called for hearing, defendant could have reasonably believed that the assistant was going to act as prosecutor, or, if not, that the assistant would make sure that the actual prosecutor would be kept up to speed with significant developments in the case such as the issuance of a speedy-trial demand. The Village's argument that it did not receive service of the speedy-trial demand, notwithstanding the fact that the Village never contested the fact that the speedy-trial demand was actually tendered on September 28, is little more than gamesmanship and disingenuity. After all, if it had been a serious argument, the Village would have provided actual authority and legal analysis in support of it. Accordingly, we reject the Village's argument.

¶ 34 Next, the Village argues that defendant's absence, due to illness, from the April 7, 2009, hearing was a failure to appear resulting in the waiver of defendant's speedy-trial demand. In support of this contention, the Village cites to section 103-5(b), which provides that "[t]he defendant's failure to appear for any court date set by the court operates to waive the defendant's demand for trial made under this subsection." 725 ILCS 5/103-5(b) (West 2008). The Village criticizes defendant's use of *People v. Zakarauskas*, 398 Ill. App. 3d 451 (2010), for the proposition that it creates an exception for explained absences and thus the above-quoted provision of section 103-5(b) applies only where the defendant's absence is unexplained. The Village concludes that defendant's reliance on *Zakarauskas* is unfounded where "[n]othing in the language of the statute indicates any exceptions to the failure to appear waiver of the speedy trial demand." We disagree.

¶ 35 We see a number of problems with the Village's argument. First and foremost, there is no indication that defendant failed to appear at the April 7 hearing. Obviously, the record (and the parties' agreement) indicates that defendant was not personally present at the April 7 hearing. Defendant's counsel, however, appeared for defendant and informed the court of defendant's illness and inability to attend the hearing. Counsel also informed the court that before the hearing she informed the Village's prosecutor that defendant was ill and would not be attending the hearing. Counsel then made a motion for a continuance, and the trial court granted the motion. Significantly, the record does not indicate, and the Village does not argue, that any objection was raised to the motion to continue the matter. Thus, it appears that the Village knew of and did not object to defendant's absence from the hearing. We contrast this with the proceedings in 2007, when defendant failed to appear. Counsel, if any, did not ask for a continuance, and the court issued a bond forfeiture and arrest warrant based on defendant's failure to appear. Regarding the April 7 absence, the court did not issue a warrant, but instead granted a continuance. Due to the difference in the actions, we conclude

that defendant's absence on April 7 was not the same as his failure to appear in 2007, so that defendant did not run afoul of the failure-to-appear waiver provision of section 103-5(b). Because defendant did not fail to appear for purposes of section 103-5(b), he did not waive his speedy-trial demand.

¶ 36     Our conclusion is bolstered by *Zakarauskas*. In that case, the defendant did not appear at a court date and his counsel could not contact him, but counsel assured the trial court that the defendant's absence was due only to a "mix up." The trial court issued a bond forfeiture warrant, and the next time the defendant appeared, a speedy-trial demand was filed. *Zakarauskas*, 398 Ill. App. 3d at 452. The defendant eventually moved to dismiss the case based on the failure to bring him to trial within the speedy-trial term. The trial court ultimately granted the defendant's motion, holding that his absence did not waive his speedy-trial demand but only tolled the term until the defendant next appeared in the trial court, and the State appealed. *Zakarauskas*, 398 Ill. App. 3d at 453.

¶ 37     The appellate court considered the language of the speedy-trial statute and the effect of the 2000 amendment to the statute. *Zakarauskas*, 398 Ill. App. 3d at 453-54. Specifically, the court noted that "[t]he plain language of section 103-5(b) as amended in 2000 manifested the legislature's intent to distinguish a defendant's failure to appear in court from other types of delay, a motion for a continuance, for example, either by the defendant or by agreement." *Zakarauskas*, 398 Ill. App. 3d at 454. The court reasoned that the defendant waived his demand, because, when he failed to appear, he was no longer on bond and had committed a criminal offense. The court further reasoned that to allow a defendant to skip appearing at a scheduled hearing would allow the fugitive defendant to benefit from an earlier (perhaps by years) speedy-trial demand when he was finally apprehended and brought before the court, which would be contrary to the legislative intent in adding the waiver provision to section 103-5(b). *Zakarauskas*, 398 Ill. App. 3d at 454.

¶ 38     Here, we have not a failure to appear, but an absence and the grant of a motion to continue the matter, one of the types of delay that the court specifically addressed as not causing a waiver under section 103-5(b). *Zakarauskas*, 398 Ill. App. 3d at 454. Further, unlike the *Zakarauskas* waiver situation, defendant's absence did not cause the issuance of a bond forfeiture warrant. Thus, we see here different circumstances from those in *Zakarauskas* that caused the defendant to waive his speedy-trial demand. *Zakarauskas* distinguished between instances in which the trial court issues a bond forfeiture warrant and those in which it takes a different action. Here, the trial court expressly accepted counsel's representations and granted defendant's motion to continue the matter. Significantly, the Village does not appear to have objected to the continuance, so we cannot see how defendant's absence can be construed to waive his speedy-trial demand. Accordingly, we reject the Village's waiver argument.

¶ 39     We also note that the Village's argument is internally inconsistent. The Village ignores defendant's January 16, 2009, excused absence and focuses only on defendant's April 7 absence, which was also excused by the trial court. According to the Village, only the April 7 absence waived his speedy-trial demand even though defendant was absent from court on both January 16 and April 7 and even though the trial court treated each absence in the same manner. In order to present a consistent argument the Village should have also objected to

the January 16 absence, because there is no reason under the Village's logic to treat the absences differently from each other in light of the Village's attempt to argue that any failure to appear in court waives the defendant's speedy-trial demand. The fact that the Village accepts one excused absence with no qualms and objects to a second excused absence, even though the trial court considered them to be the same and treated them the same, undercuts the force of the Village's contentions.

¶ 40    The Village has failed to present any viable arguments that the September 28 speedy-trial demand was ineffective. We count 219 days elapsed since the speedy-trial term began on September 28. Thus, the Village did not bring defendant to trial within the 160-day speedy-trial period of section 103-5(b). Accordingly, we hold that the trial court erred in denying defendant's motion to dismiss and we vacate defendant's convictions.

¶ 41    As a result of our holding, we do not need to consider the Village's arguments regarding defendant's second, February 13, 2009, speedy-trial demand.

¶ 42    For the foregoing reasons, we vacate the judgment of the circuit court of Lake County.

¶ 43    Vacated.