# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Brexton*, 2012 IL App (2d) 110606

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES A. BREXTON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-11-0606 |
| Filed | December 28, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | When defendant's counsel agreed to a trial date outside the 120-day period, the trial court did not err in denying defendant's subsequent motion to dismiss on speedy-trial grounds; furthermore, defendant's conviction for retail theft was vacated pursuant to the one-act, one-crime rule, since defendant's convictions for theft and theft by emergency exit were based on the single theft of a television. |
| Decision Under Review | Appeal from the Circuit Court of Stephenson County, No. 09-CF-151; the Hon. Michael P. Bald, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

| | |
|---|---|
| Counsel on Appeal | Thomas A. Lilien and Barbara R. Paschen, both of State Appellate Defender's Office, of Elgin, for appellant. |
| | John H. Vogt, State's Attorney, of Freeport (Lawrence M. Bauer and David A. Bernhard, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHOSTOK delivered the judgment of the court, with opinion. Presiding Justice Burke and Justice Jorgensen concurred in the judgment and opinion. |

# OPINION

¶ 1    Following a bench trial, defendant, James A. Brexton, was convicted of burglary (720 ILCS 5/19-1(a) (West 2008)), retail theft (720 ILCS 5/16A-3(a) (West 2008)), and theft by emergency exit (720 ILCS 5/16A-3.5 (West 2008)). On appeal, defendant argues that his convictions must be vacated because he was denied his right to a speedy trial. Defendant alternatively argues that his retail theft conviction should be vacated under the one-act, one-crime rule. We agree with defendant's second argument and therefore affirm in part and vacate in part.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant was arrested on June 11, 2009, the date of the incident. On September 21, 2009, he was charged by amended information with four counts of burglary, two counts of retail theft, and theft by emergency exit. The charges alleged that defendant used an emergency exit to take a television worth over $150 from the Freeport K-Mart.

¶ 4    On October 1, 2009, defense counsel filed a motion to appoint a clinical psychologist to ascertain defendant's sanity at the time of the offense and his fitness to stand trial. The trial court granted the motion the same day. On December 7, 2009, a jury found defendant unfit to stand trial, and he was ordered to undergo treatment.

¶ 5    On February 12, 2010, the trial court found that defendant had been restored to fitness. The following exchange then occurred, which is central to the speedy-trial issue on appeal:

"THE COURT: Now, as I recall, we were trying to keep this on a somewhat expedited schedule in regard to pretrial and trial dates.

Madam Clerk, can we have something hopefully within the range of about a month if we could? Assuming that it fits in the schedules of everyone involved here.

THE CLERK: How about a pretrial March 12 at 9:00 and a jury trial March 15 at 9:00?

THE COURT: Pretrial March 12 at 9:00, and the jury trial March 15 at 9:00. Would that be acceptable, Mr. Peska?

MR. PESKA [Assistant Public Defender]: *Those dates are fine, Judge.*

THE COURT: Okay. Mr. Lentz?

MR. LENTZ [Assistant State's Attorney]: Yes, Judge. That's fine.

THE COURT: Now, at this time we'll also remand the defendant from the Department of Human Services to the Stephenson County jail under the same bond, same conditions.

So Mr. Brexton, you'll be returning here. Your attorney is right here. We're trying to set this on about as quick a schedule as we can possibly do.

MR. PESKA: *Judge, I think the Court facilitated what I would be asking anyways, but just so it's on the record, I would note that Mr. Brexton has demanded a speedy trial, and I realize the Court has scheduled this in such a fashion, but I just wanted to go on the record and say that.*

THE COURT: Very good. And I think that the State is aware of that also at this time." (Emphases added.)

¶ 6        On March 12, 2010, defendant moved to dismiss the charges on speedy-trial grounds, and the trial court granted the motion on March 15. However, on March 23, the State filed a motion to reconsider and reinstate the charges. Based on the case law submitted by the State, the trial court granted the motion on March 31.

¶ 7        On April 15, 2010, the trial court allowed defendant to proceed *pro se*. However, on June 2, defendant asked for counsel to be reappointed, and the trial court granted his request.

¶ 8        Defendant's bench trial began on June 14, 2010. The trial court ultimately found defendant guilty of two of the four burglary counts, both counts of retail theft, and theft by emergency exit. On July 13, defendant filed motions for a new trial and to set aside the verdict.

¶ 9        On August 11, 2010, defendant again chose to proceed *pro se*. He adopted defense counsel's posttrial motions in addition to filing his own *pro se* motions. Defendant's arguments ultimately included a claim that his counsel was ineffective for failing to object to the trial court setting a trial date outside the 120-day speedy-trial period. The trial court denied defendant's motion for a new trial on February 16, 2011. Regarding his other motions, defendant called his prior defense counsel, Assistant Public Defender Peska, as a witness on April 26, 2011. Peska testified that February 12, 2010, was his first appearance for defendant. At that hearing, he had not yet calculated when 120 days would lapse for speedy-trial purposes, and he assumed that the dates given by the court were within that time period. When he later realized that they were not, he filed the motion to dismiss the charges on speedy-trial grounds.

¶ 10        The trial court denied defendant's remaining motions on May 11, 2011, and it denied his motion to reconsider on June 3, 2011. At the sentencing hearing on June 20, 2011, the trial

court merged the two counts of burglary and sentenced defendant to 12 years' imprisonment for that conviction. It similarly merged the two counts of retail theft and sentenced him to concurrent terms of seven years' imprisonment for that conviction and the conviction of theft by emergency exit. Defendant timely appealed.

¶ 11                                    II. ANALYSIS

¶ 12                                   A. Speedy Trial

¶ 13      Defendant first argues that his convictions must be reversed because his statutory right to a speedy trial was violated. The right to a speedy trial for a defendant in custody is covered by section 103-5(a) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/103-5(a) (West 2010)). Under that statute, a defendant in custody must be tried within 120 days from the date that he was taken into custody. *Id.* While a defendant on bail must make a demand for a speedy trial to commence the running of the statute, such a demand is not required of a defendant who remains in custody after arrest, for whom the 120-day period begins to run automatically. *People v. Adams*, 404 Ill. App. 3d 405, 414 (2010). Pretrial delays caused by the defendant or by the parties' agreement are not counted in determining the speedy-trial period. 725 ILCS 5/103-5(a), (f) (West 2010); *Adams*, 404 Ill. App. 3d at 414. A "[d]elay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2010). The defendant has the burden of establishing a violation of his or her speedy-trial rights. *People v. Higgenbotham*, 2012 IL App (1st) 110434, ¶ 16. If a defendant is not tried within the statutorily mandated period, the charges against him must be dismissed. 725 ILCS 5/103-5(d), 114-1(a)(1) (West 2010); *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006).

¶ 14      The parties dispute the applicable standard of review. Defendant recognizes that this court stated in *People v. Weddell*, 405 Ill. App. 3d 424, 431 (2010), that, generally, a trial court's determination of who is responsible for a delay is entitled to deference and will be affirmed absent an abuse of discretion. However, citing *People v. Crane*, 195 Ill. 2d 42, 52 (2001), defendant argues that *de novo* review is applied to the ultimate issue of whether a speedy-trial violation occurred. We note that *Crane* dealt with a constitutional speedy-trial claim (*id.* at 51), and this court has recently applied different standards of review to constitutional speedy-trial claims as compared to statutory speedy-trial claims. Compare *People v. Totzke*, 2012 IL App (2d) 110823, ¶ 17 (applying *de novo* review to ultimate determination of whether a defendant's constitutional speedy-trial right was violated), with *People v. Kohler*, 2012 IL App (2d) 100513, ¶ 16 (stating that a trial court's ruling on a speedy-trial challenge is generally reviewed for an abuse of discretion). In any event, we need not definitively determine whether *de novo* review or the abuse-of-discretion standard should be applied here, as our result would be the same under either standard. See *Kohler*, 2012 IL App (2d) 100513, ¶ 16.

¶ 15      In arguing that his trial was held outside of the 120-day statutory period, defendant contests only the period of time from February 12, 2010, when the trial court found that he was restored to fitness and set the matter for trial on a date that turned out to be outside of

the speedy-trial term, to March 12, 2010. Defendant asserts that his *pro se* motions leading up to the February 12 hearing clearly demonstrated that he wished to preserve his right to a speedy trial.

¶ 16        Defendant further points out that the trial court initially granted his motion to dismiss the charges on speedy-trial grounds, based on *People v. Schmidt*, 233 Ill. App. 3d 512 (1992). In that case, at a hearing where the defendant was found to be restored to fitness, the trial court and the parties discussed the possibility that the 120-day speedy-trial period might have run, but the parties were not sure how much time was attributable to each side. *Id.* at 513. A few days later, the defendant filed a motion to dismiss on speedy-trial grounds, but the trial court deferred its ruling and proceeded to trial. The defendant renewed his motion several times, including in a posttrial motion. The trial court denied the motion without making specific findings. *Id.* The appellate court reversed, stating that a "defendant has no duty to advise the court that the date set for trial presents a speedy trial problem" and that the defendant was "not accountable for delay that took the case outside the term." *Id.* at 516-17.

¶ 17        Here, the trial court granted the State's motion to reconsider and reversed its ruling, based on the State's citations to *People v. Cordell*, 223 Ill. 2d 380 (2006), and *People v. Hampton*, 394 Ill. App. 3d 683 (2009). In *Cordell*, defense counsel did not object to a trial date that was outside the 120-day speedy-trial period. The defendant subsequently alleged that his counsel was ineffective for not seeking dismissal of the charges on speedy-trial grounds. *Cordell*, 223 Ill. 2d at 385. Our supreme court stated that, before 1999, section 103-5(a) did not contain the provision requiring a defendant to object to any delay in his trial for the delay to be attributable to the State. *Id.* at 386; see 725 ILCS 5/103-5(a) (West 2010) ("Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record."). Therefore, under the prior version of the statute, only a defendant's affirmative acts that caused or contributed to the delay, such as express agreements to continuances on the record, would toll the speedy-trial period. Conversely, a defendant's silence or the failure to object to continuances that the State or the trial court requested were not considered affirmative acts, and the delays were not attributable to the defendant. *Cordell*, 223 Ill. 2d at 386.

¶ 18        Our supreme court determined that the word "delay," as used in the amended version of section 103-5(a), refers to any action by either party or the trial court that moves the trial date outside of the 120-day period. *Id.* at 390. It stated that "[t]his ruling does not prohibit a defendant from objecting to a trial date set outside the 120-day period by trial courts, but rather allows courts the opportunity to *propose* such a date in the interest of efficiency and convenience to both parties and the court, and gives defendants the option of accepting or rejecting the proposed date." (Emphasis in original.) *Id.* The supreme court stated that, in this manner, a defendant could object and use section 103-5 as a shield against any attempt to schedule the trial date outside of the 120-day period, but he could not use the statute as a sword after the fact to defeat a conviction. *Id.* The supreme court stated that in the case before it, once the trial court set a date for trial outside of the speedy-trial period, the defendant was obligated to object to stop the speedy-trial clock from tolling. *Id.* at 390-91. It further stated that, although the defendant did make some demands for a speedy trial, they occurred before the trial court had proposed any trial dates. *Id.* at 391. The supreme court

-5-

continued:

> "A simple request for trial, before any 'delay' is proposed, is not equivalent to an objection for purposes of section 103-5(a). [Citation.] As amended, section 103-5(a) places the onus on a defendant to take affirmative action when he becomes aware that his trial is being delayed. To allow basic requests for trial, made before any delay was even proposed, to qualify as objections to 'delays' not yet proposed would provide defendants with another sword to use after the fact to overturn their convictions." *Id.* at 391-92.

The supreme court concluded that, because the defendant did not object to any of the delays of his trial, they were considered to be " 'agreed to,' " and thus his claim of ineffective assistance of counsel failed. *Id.* at 392.

¶ 19 In *Hampton*, the State moved to continue the trial due to the unavailability of a material witness. *Hampton*, 394 Ill. App. 3d at 684. At a hearing on the motion on February 28, 2008, the following exchange occurred:

> " '[DEFENSE COUNSEL]: Judge, we have previously demanded a speedy trial. We would continue in that demand.
>
> THE COURT: It's People's time now. Do you want me to go forward or backwards? Should I go past this date, or do you want me to try and advance the date?
>
> [DEFENSE COUNSEL]: March 31st.
>
> [ASSISTANT STATE'S ATTORNEY]: March 31st would be fine. Ms. Mosser [another assistant State's Attorney] says the week before or week after, and court is still unavailable the 17th.
>
> Is that an accurate statement?
>
> THE COURT: Yes. All right. Then I shall mark you down for March 31st. People's motion to continue is granted. Final pretrial conference is the Friday before, March 28th.' " *Id.*

The trial court granted the defendant's motion to dismiss the charge against him based on a speedy-trial violation. *Id.* at 685. In doing so, it attributed the delay from February 28 to March 28 to the State. *Id.* at 687.

¶ 20 On appeal, the State argued that, *inter alia*, it was not responsible for the aforementioned delay. This court agreed, stating that, when the trial court set the defendant's trial beyond the 120-day limit, the defendant did not object, and instead his attorney had proposed the date. *Id.* at 688-89. We stated, "Defendant could either assert his right to be tried within the speedy-trial term or agree to be tried outside the term, but he could not agree to be tried outside the term and then complain that the trial court should have given him a speedy trial." *Id.* at 689. We recognized that the situation differed from *Cordell* in that the *Hampton* defendant initially objected on speedy-trial grounds when the State moved for the continuance. *Id.* However, we stated that the difference was not "material" because, after the trial court decided to grant the State a continuance, the defendant "could not stand mute (or affirmatively propose a date outside the speedy-trial term) if he wanted to successfully invoke his rights under section 103-5(a) later." *Id.* We therefore held that the trial court erred in granting the defendant's motion to dismiss the charge.

¶ 21    Defendant argues that this case is distinguishable from *Cordell* because there, defense counsel acquiesced in the new date set by the court and did not say anything about a speedy trial, and the defendant did not move to dismiss on speedy-trial grounds until after the trial. Defendant argues that the *Cordell* court was concerned that a defendant should not be allowed to use a procedural loophole to obstruct justice (see *Cordell*, 223 Ill. 2d at 390), which he argues implies a knowing failure to object until after the fact. Defendant cites *Cordell*'s statement that amended "section 103-5(a) places the onus on a defendant to take affirmative action *when he becomes aware that his trial is being delayed*" (emphasis added) (*id.* at 391), and he argues that here counsel asserted defendant's right to a speedy trial both on February 12 and again when he realized that the new trial date had been set outside the speedy-trial term. Defendant maintains that what *Cordell* required was that an objection be made when the defense realizes that the date exceeded the term, and he argues that his counsel fulfilled this requirement.

¶ 22    Defendant argues that *Hampton* is also distinguishable because there this court relied on the fact that defense counsel did not simply acquiesce in the disputed date but, rather, affirmatively requested it.

¶ 23    We note that, while defendant references *pro se* motions demanding a speedy trial that he filed before the February 12 hearing at issue, *Cordell* teaches us that basic requests for trial that are made before the delay is proposed do not qualify as objections to the delay. *Cordell*, 223 Ill. 2d at 391-92. Defendant's citation to *Schmidt* is also unavailing, as that case involved the preamended version of section 103-5(a), which did not require a defendant to object to trial delays (see *id.* at 386), whereas the current version of section 103-5(a) requires a defendant to object once the trial court sets a date for trial outside of the speedy-trial period (see *id.* at 390-91).

¶ 24    Moreover, we disagree with defendant that *Cordell* requires only that an objection be made when the defense realizes that the trial is being set beyond the 120-day period. While *Cordell* did state that a defendant is obligated to take action when he becomes aware that his trial is being delayed, it also stated that, when the trial court set the trial beyond the speedy-trial period, the "defendant was obligated to object in order to prevent the speedy-trial clock from tolling." *Id.* at 391. Tellingly, our supreme court cautioned that section 103-5(a) is to be used only as a shield against any attempt to place the trial date outside the 120-day period, not as a sword to defeat a conviction after the fact (*id.* at 390), which defendant's interpretation would permit. Thus, *Cordell* requires that a defendant object to a trial delay in order to avoid tolling the speedy-trial period, regardless of whether the defendant realizes at the time that the trial is set outside of the 120-day window. Here, the defense did not object to the trial date, but to the contrary stated that the trial date was "fine" and that the trial court had scheduled the trial in accordance with defendant's right to a speedy trial. As such, the continuance is considered "agreed to" by defendant. See *id.* at 392.

¶ 25    *Hampton*, which was decided by this court, is consistent with our analysis. There, as in this case, the defense mentioned a speedy-trial demand during the hearing at which the trial date was set, but we held that a defendant must specifically object to the proposed trial date so as not to use section 103-5(a) as a sword rather than a shield. *Hampton*, 394 Ill. App. 3d at 689. Defendant claims that *Hampton* covers only situations where defense counsel did not

simply acquiesce in the disputed date, as his counsel did, but rather affirmatively requested it. However, as mentioned, in *Hampton* we stated that "after the trial judge did decide to grant the State a continuance, defendant *could not stand mute* (or affirmatively propose a date outside of the speedy-trial term) if he wanted to successfully invoke his rights under section 103-5(a) later." (Emphasis added.) *Id.* Thus, *Hampton* is not limited to situations where the defense offers a particular trial date. As we stated, "what [a defendant] may not do is acquiesce in the setting of a date outside the period, then later obtain a dismissal on the ground that he was denied a speedy trial." *Id.* at 688. Here, defense counsel clearly acquiesced to a trial date that was outside of the 120-day period, so the trial court did not err in granting the State's motion to reconsider and denying defendant's motion to dismiss the charges on speedy-trial grounds.

¶ 26                                    B. One-Act, One-Crime Rule

¶ 27       Defendant also argues that his conviction of retail theft must be vacated under the one-act, one-crime rule enunciated in *People v. King*, 66 Ill. 2d 551 (1977), because both that conviction and the conviction of theft by emergency exit were based on a single theft of a television. Under the one-act, one-crime rule, multiple convictions may not be based on the same physical act. *People v. Kuntu*, 196 Ill. 2d 105, 130 (2001). Defendant did not raise his one-act, one-crime argument at the trial level, but forfeited one-act, one-crime arguments may be addressed under the plain-error doctrine because they affect the integrity of the judicial process. *People v. Harvey*, 211 Ill. 2d 368, 389 (2004). We review *de novo* the application of the one-act, one-crime rule. *People v. Artis*, 232 Ill. 2d 156, 161 (2009).

¶ 28       We agree with defendant that both the retail theft and theft-by-emergency-exit convictions were based on the same physical act of stealing a television. See *People v. Hardin*, 2012 IL App (1st) 100682, ¶ 35 ("a defendant may be convicted of only one crime of theft where he has committed a single act of theft"). The State concedes error on this issue. Where a defendant is convicted of two crimes based on the same physical act, we vacate the conviction of the less serious offense. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). Retail theft of property valued at over $150, as charged here, is a Class 3 felony. 720 ILCS 5/16A-10(3) (West 2008). Theft by emergency exit of property valued at over $150 is a Class 2 felony. *Id.* Accordingly, we vacate the retail theft conviction.

¶ 29                                         III. CONCLUSION

¶ 30       For the reasons stated, we affirm the judgment of the Stephenson County circuit court insofar as it pertains to defendant's convictions of burglary and theft by emergency exit, but we vacate defendant's conviction of retail theft.

¶ 31       Affirmed in part and vacated in part.