NOTICE
Decision filed 10/28/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170405-U

NO. 5-17-0405

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 15-CF-885 & |
| | ) | No. 15-CF-886 |
| | ) | |
| JAY A. HANKS, | ) | Honorable |
| | ) | Neil T. Schroeder, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Welch and Justice Wharton concurred in the judgment.

**ORDER**

¶ 1 *Held*: The trial court's summary dismissal of defendant's postconviction petitions at the first stage was proper where the record demonstrated the petitions were frivolous and patently without merit.

¶ 2 Defendant, Jay A. Hanks, appeals from the summary dismissal of his *pro se* petitions for postconviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2016)). For reasons that follow, we affirm.

¶ 3 In April 2015, the Illinois Crimes Against Children Task Force obtained information indicating that child pornography photos and videos were being downloaded to a computer located at defendant's residence in Edwardsville, Illinois, and notified the

1

Edwardsville Police Department. After conducting additional investigation and surveillance, detectives from the Edwardsville Police Department obtained a warrant to search defendant's home and computers. On the morning of April 15, 2015, seven law enforcement officers went to defendant's home to execute the search warrant. One of the officers knocked on defendant's door. When defendant opened the door, the officer introduced himself and advised defendant of the search warrant. Defendant backed away from the door, obtained a handgun, and pointed it at the officers. A struggle ensued. Defendant was hit by a bullet and suffered an injury to his arm. One of the officers was also hit by a bullet and suffered an injury to his hand. Defendant received medical treatment for his injury. He was then released into police custody.

¶ 4     On April 16, 2015, defendant was charged by information, in case number 15-CF-885, with seven counts of aggravated assault against a peace officer in the execution of his or her official duties. That same day, defendant was charged by information, in case number 15-CF-886, with four counts of possession with intent to disseminate child pornography videos, and one count of armed violence. On April 17, 2015, an initial appearance was held in each case. During the initial appearance, the trial court informed defendant of all charges and appointed the public defender to represent defendant in both cases. On April 20, 2015, defendant, through the public defender, filed a demand for a speedy trial, pursuant to the United States Constitution, the Illinois Constitution, and the speedy trial statute (725 ILCS 5/103-5(a) (West 2014)).

¶ 5     On May 14, 2015, defendant was indicted on all offenses previously charged in cases 15-CF-885 and 15-CF-886. He was arraigned that same day. During the

2

arraignment, defendant entered a formal plea of not guilty and demanded a trial by jury in each case. Both cases were set for trial on June 1, 2015.

¶ 6　A review of the record shows that defendant's cases proceeded on the same procedural timeline, with one exception.[1] The record also shows that defendant, through his counsel, subsequently moved to continue the trial settings several times. There are no transcripts of proceedings from those motion hearings, but the docket entries and the "form" orders in the record show that defendant's motions to continue were granted. The "form" orders contained options to designate that a trial setting was continued on the motion of the defendant, by agreement, or on the motion of the State. The forms also contained a line to print the next trial setting, and a place to indicate whether the delay was attributable to the defendant or the State. The form provided in pertinent part:

"Pursuant to the jury trial setting [date], it is ordered that:

____ the trial to be continued to _____ @ 9:00 A.M. on motion of the defendant / by agreement (please circle)

____ the trial to be continued to _____ @ 9:00 A.M. on motion of the State

* * *

____ delay attributable to Defendant / State."

¶ 7　In case number 15-CF-885, the trial court entered "form" orders continuing the trial settings nine times. On June 1, 2015, the trial court entered an order continuing the

---

[1]In an order entered June 15, 2015, in 15-CF-885, the trial court granted a continuance and reset the trial for July 20, 2015. In a separate order entered June 15, 2015, in 15-CF-886, the court granted a continuance and reset the trial for September 14, 2015.

trial to June 15, 2015, on the defendant's motion, and the delay was attributed to defendant. On June 15, 2015, the trial was continued to July 20, 2015, on defendant's motion, and the delay was attributed to defendant. On July 20, 2015, the trial was continued to September 14, 2015, on defendant's motion, and the delay was attributed to defendant. On September 14, 2015, the trial was continued to October 5, 2015, with the delay attributed to the defendant. The September 2015 order does not indicate whether the continuance was requested by defendant or made by agreement, but the docket entry indicates that the trial was continued on the motion of defendant. On October 5, 2015, the order indicated that the trial was to be continued to December 7, 2015; that defendant was granted leave to file a motion to suppress; and that the delay was attributed to defendant.

¶ 8    In case number 15-CF-886, the trial court entered "form" orders continuing the trial settings eight times, and the delays were expressly attributed to defendant in all but the final order of continuance. On June 1, 2015, the trial court entered an order continuing the trial to June 15, 2015, and the delay was attributed to defendant. On June 15, 2015, the trial was continued to September 14, 2015, and the delay was attributed to defendant. On September 14, 2015, the trial was continued to October 5, 2015, and the delay was attributed to the defendant. The orders of June 1, June 15, September 14, do not indicate that the continuance was requested by defendant, but the corresponding docket entries state that the trial was continued on defendant's motion. On October 5, 2015, the trial was continued to December 7, 2015, on motion of defendant, and the delay was attributed to defendant.

4

¶ 9 On October 28, 2015, a new attorney entered his appearance on behalf of defendant in both cases. On December 1, 2015, defendant's counsel filed a written motion in each case, seeking a continuance of the December 7, 2015, trial setting to allow him to review discovery. Counsel asserted that defendant would be "unduly harmed and prejudiced" if defendant were required to go to trial on December 7, 2015. In docket entries dated December 1, 2015, the trial court granted defendant's motions to continue and the cases were reset for trial on January 19, 2016.[2]

¶ 10 The cases were continued on January 19, 2016, and February 8, 2016, on defendant's motions, and the delays were attributed to defendant. On March 7, 2016, the trial court continued the cases, this time by agreement. The cases were reset for trial on April 4, 2016. The order did not attribute delay to either defendant or the State.

¶ 11 On March 23, 2016, defendant pleaded guilty to two counts of aggravated assault in 15-CF-885. The court sentenced defendant to two years in prison on each count, and the sentences were to run concurrently. The remaining five counts of aggravated assault in 15-CF-885 were nol-prossed.

¶ 12 On that same date, defendant entered a plea of guilty to one count of child pornography in 15-CF-886, and he was sentenced to 15 years in prison, with day-for-day credit. The sentences imposed in 15-CF-885 were to run consecutively to the 15-year sentence imposed in 15-CF-886. The other counts in 15-CF-886 were nol-prossed.

---

[2]On December 7, 2015, an order was entered in 15-CF-886, apparently in error. The order indicated that neither counsel nor defendant appeared for trial. The trial was reset for January 19, 2016, with delay attributable to defendant.

Defendant was given credit for time served from April 15, 2015, through March 23, 2016.

¶ 13    Defendant did not move to withdraw his guilty pleas, and he did not appeal his convictions and sentences. On September 25, 2017, defendant filed a *pro se* petition for postconviction relief in each case. Defendant alleged that his trial counsel was ineffective in failing to seek a dismissal of all charges based upon violations of his right to a speedy trial, and that but for counsel's ineffective assistance, there was a reasonable probability that defendant would have been discharged, had a motion been filed. Defendant also claimed that he did not knowingly and intelligently waive his speedy trial rights because defendant's counsel did not inform defendant of his right to seek discharge under the speedy trial statute. Defendant attached the form orders and docket entries referenced above in support of his petition.

¶ 14    On October 6, 2017, the trial court entered an order in each case, dismissing defendant's *pro se* petition for postconviction relief. In its orders, the trial court acknowledged that during the first stage of review, the court had an obligation to independently determine whether the petition presented the gist of a constitutional claim. The court then ruled as follows:

"The Court has reviewed the petition and the Court's own records. The defendant was in continuous custody from the time of his arrest through the date of the pleas of guilty. The form trial orders attached to the defendant's petition indicate that all continuances were either by agreement of the attorneys, at the request of the defendant (by his attorney), or due to the defendant's attorney's

6

failure to appear at a setting (see order entered December 7, 2015, in 15-CF-886). The statutory right to a speedy trial states that, for those persons in custody, '[d]elay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record.' 725 ILCS 5/103-5(a). This statutory provision has been upheld on appeal (See *People v. Craig Ingram*, 357 Ill.App.3d 228 (5th Dist. 2005)). The record is clear that neither the defendant's statutory nor constitutional right to a speedy trial was violated. Further, an attorney cannot be held to be ineffective for failing to raise a meritless and baseless motion for discharge due to a non-existent violation of the defendant's speedy trial rights.

The defendant's petitions for post-conviction relief are frivolous and patently without merit. As such, they are dismissed."

¶ 15   On appeal, defendant argues that the trial court erred when it dismissed his *pro se* postconviction petitions at the first stage. Defendant asserts his petitions sufficiently alleged the "gist" of a constitutional claim that his counsel was ineffective for failing to ensure defendant's statutory right to a speedy trial. Specifically, defendant claims that trial counsel failed to advise defendant of his right to a speedy trial and failed to seek a dismissal of all the charges against defendant based on a speedy trial violation.

¶ 16   The Post-Conviction Hearing Act (Act) provides a mechanism by which persons under a criminal sentence in Illinois can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution, the Illinois Constitution, or both. 725 ILCS 5/122-1 *et seq.* (West 2016); *People v. Hodges*, 234 Ill.

2d 1, 9 (2009). The purpose of the postconviction proceeding is to allow inquiry into constitutional issues involved in the original conviction and sentence that have not been, and could not have been, adjudicated previously on direct appeal. *People v. Blair*, 215 Ill. 2d 427, 443-44 (2005). Proceedings under the Act are commenced by the filing of a petition in the circuit court in which the original proceedings occurred. 725 ILCS 5/122-1 (West 2016). The petition need only present the "gist" of a constitutional claim. *Hodges*, 234 Ill. 2d at 9.

¶ 17 The Act establishes a three-stage process for adjudicating a postconviction petition. *Hodges*, 234 Ill. 2d at 9-10. During the first stage, the circuit court must independently determine whether the allegations in defendant's petition to determine are frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2016). A postconviction petition is frivolous or patently without merit only if it has no arguable basis either in law or in fact. *Hodges*, 234 Ill. 2d at 16. A claim has no arguable basis in law or fact if it is "based on an indisputably meritless legal theory," such as one that is "completely contradicted by the record," or "a fanciful factual allegation," including "those which are fantastic or delusional." *Hodges*, 234 Ill. 2d at 16-17. The circuit court's summary dismissal of a defendant's postconviction petition is reviewed *de novo*. *Hodges*, 234 Ill. 2d at 9.

¶ 18 In determining whether defendant has asserted an arguable claim of ineffective assistance of counsel, our courts apply the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted in *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Under *Strickland*, a defendant must show that counsel's performance fell

below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 687-88; *Albanese*, 104 Ill. 2d at 525. During the first stage of the postconviction proceedings, a petition alleging ineffective assistance of counsel may not be summarily dismissed if it is arguable that counsel's performance fell below an objective standard of reasonableness, and it is arguable that defendant was prejudiced. *Hodges*, 234 Ill. 2d at 17.

¶ 19    In Illinois, a defendant has constitutional and statutory rights to a speedy trial. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5 (West 2014). The speedy trial statute is set forth in section 103-5 of the Code of Criminal Procedure of 1963. 725 ILCS 5/103-5. The statute enforces the constitutional right to a speedy trial guaranteed by the United States Constitution and the Illinois Constitution. *People v. Mosley*, 2016 IL App (5th) 130223, ¶ 9. Section 103-5(a) provides as follows: "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant ***." 725 ILCS 5/103-5(a) (West 2014).

¶ 20    The 120-day speedy trial period begins to run automatically if a defendant remains in custody pending trial. *People v. Phipps*, 238 Ill. 2d 54, 66 (2010). If a defendant is not tried within the statutory speedy trial period, the defendant must be discharged from custody and the charges must be dismissed. 725 ILCS 5/103-5(d) (West 2014). The 120-day period can be extended by a delay of trial that is attributable to the defense. 725 ILCS 5/103-5(a) (West 2014). Delay is attributable to the defendant whenever he agrees to a

9

continuance of trial with respect to the offenses with which he is charged. *Mosley*, 2016 IL App (5th) 130223, ¶ 11; *People v. Ingram*, 357 Ill. App. 3d 228, 232-33 (2005). Any period of delay occasioned by the defendant tolls the statutory clock. *People v. Mayo*, 198 Ill. 2d 530, 537 (2002).

¶ 21    To prevent the speedy-trial clock from tolling, section 103-5(a) requires a defendant to object to any attempt to place the trial date outside the 120-day period. *People v. Cordell*, 223 Ill. 2d 380, 391 (2006). Section 103-5(a) provides in part: "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a). Thus, the statute "places the onus on a defendant to take affirmative action when he becomes aware that his trial is being delayed." *Cordell*, 223 Ill. 2d at 391.

¶ 22    In this case, defendant has alleged that his counsel was ineffective in failing to advise defendant of his right to a speedy trial and in failing to seek a dismissal of all charges against defendant based on a speedy trial violation. Counsel's failure to assert a speedy trial violation cannot establish either prong of an ineffective assistance of counsel claim if there is no lawful basis for raising a speedy-trial objection. *Cordell*, 223 Ill. 2d at 385. Accordingly, we must determine whether there is a lawful basis for raising a speedy-trial objection.

¶ 23    We begin by considering the effect of defendant's guilty pleas on his claim that his right to a speedy trial was violated. It is well settled that a criminal defendant's guilty plea waives all nonjurisdictional errors, including constitutional errors. See *People v. Townsell*, 209 Ill. 2d 543, 545 (2004). Issues waived by a defendant's voluntary plea of

10

guilty include the right to a speedy trial. *People v. De Cola*, 15 Ill. 2d 527, 531 (1959); *People v. Bowman*, 96 Ill. App. 3d 136, 140 (1981). Because defendant did not seek discharge and dismissal of all charges based on a speedy trial violation prior to the entry of his guilty pleas, defendant is deemed to have waived this issue. In this case, however, defendant has asserted that his counsel was ineffective for failing to inform defendant of his right to a speedy trial. Thus, it is appropriate to consider defendant's contention that he was not informed that he had a right to a speedy trial, and therefore, he could not knowingly waive that right. See *People v. Bivens*, 43 Ill. App. 3d 79, 82 (1976).

¶ 24    Our review of the record reveals that defendant, through court-appointed counsel, made a demand for a speedy trial on April 20, 2015. Defendant has not claimed that he was unaware of this pleading. Thereafter, defendant's court-appointed counsel requested continuances through December 7, 2015. On October 28, 2015, a private attorney entered his appearance on behalf of defendant in both cases. Counsel requested four additional continuances to review discovery and prepare for trial. Again, defendant has not asserted that he was unaware of the pleadings and continuances.

¶ 25    A review of the record also shows that all the continuances, except one, were made upon the motion of defendant, through his attorneys. When defense counsel requests a continuance on behalf of a defendant, any delay occasioned by that continuance will be attributed to the defendant. *Mayo*, 198 Ill. 2d at 537; *People v. Hall*, 194 Ill. 2d 305, 328-29 (2000). In a criminal proceeding, defense counsel is authorized to act for his client, and to determine procedural matters and make decisions involving trial strategy and tactics for that client. *People v. Bowman*, 138 Ill. 2d 131, 141 (1990). The

11

record need not affirmatively show that, in conjunction with a request for continuance, the attorney has consulted with the defendant because such a rule would "intolerably burden" the trial courts. *Bowman*, 138 Ill. 2d at 142-44.

¶ 26 To prevent the speedy-trial clock from tolling, the onus is on the defendant to take affirmative action and object to any attempt to place the trial date outside the 120-day period. *Cordell*, 223 Ill. 2d at 391. After reviewing the record, we find no indication that defendant attempted to promptly repudiate the requests for continuances made first by his appointed counsel, and then by retained counsel. *Mayo*, 198 Ill. 2d at 537; *Bowman*, 138 Ill. 2d at 141-42. There is no indication that defendant attempted to contact the court to object to the continuances or to demand a trial. There is no indication that defendant attempted to contact the court to complain that either appointed counsel or retained counsel failed to meet with defendant or failed to keep him informed of the proceedings. At the time of his plea, defendant was 43 years old and had attended college. He acknowledged that he was not suffering from any disabilities and was not under the influence of any drugs or alcohol. During the plea hearing, defendant was properly admonished. Defendant acknowledged that in pleading guilty, he was giving up his right to a trial. He stated that he had discussed the plea negotiations with his attorney. Defendant voiced no complaints about his counsel at the plea hearing. Thus, the record demonstrates that defendant did not promptly repudiate, or even attempt to repudiate his attorneys' actions.

¶ 27 The Illinois Supreme Court has clearly stated that a defendant may "employ section 103-5(a) as a shield against any attempt to place his trial date outside the 120-day

period," but the defendant may not wield section 103-5(a) as "a sword after the fact to defeat a conviction," as such would allow that defendant to "use a procedural loophole to obstruct justice." *Cordell*, 223 Ill. 2d at 390. In this case, defendant did not object to any of the delays in his trial, and those delays are attributable to defendant. Defendant did not take any affirmative action to object, or even to inquire about repeated continuances. To permit defendant to use section 103-5(a) as a sword, after the fact, to overturn his convictions does not comport with the intent of the statute. *Cordell*, 223 Ill. 2d at 390.

¶ 28    Additionally, based on the record, defendant cannot show that but for counsels' alleged ineffective assistance, there is a reasonable probability that the circuit court would have failed to try defendant within the 120-day speedy trial period. In fact, the record reflects that the trial court diligently rescheduled defendant's cases following each continuance. In essence, there was no speedy trial violation. As such, defendant cannot establish that he was prejudiced by counsels' alleged ineffective assistance.

¶ 29    Based on our review of the record, the trial court did not err in finding that defendant's *pro se* postconviction petitions were patently without merit where the allegations in defendant's postconviction petitions were rebutted by the record. Thus, the trial court did not err in dismissing defendant's petitions at the first stage of the postconviction proceedings.

¶ 30    Accordingly, the judgment of the circuit court is affirmed.

¶ 31    Affirmed.

13