2021 IL App (1st) 192172-U
No. 1-19-2172
Order filed December 6, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 12630 |
| | ) | |
| TERRELL JACKSON, | ) | Honorable |
| | ) | Michael Joseph Kane, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE HYMAN delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's statutory right to a speedy trial was not violated.

¶ 2    A jury trial found Terrell Jackson guilty of residential burglary, and the trial court sentenced him to 18 years in prison. On appeal, Jackson contends that his conviction violated his statutory right to a speedy trial on the basis that he had convincingly attempted to assert his right to self-representation and proceed to an immediate trial.

¶ 3    We affirm. Because we find a 20-day continuance attributable to Jackson, he cannot show he was tried beyond the 120-day term of the speedy trial statute.

¶ 4                           Background

¶ 5      Jackson was arrested on August 26, 2018. His trial on a single count of residential burglary began 288 days later, on June 10, 2019. The parties agree that 156 days during this time constituted delay attributable to Jackson and that 112 days constituted delay not attributable to him. The time frame at issue is the remaining 20-day period between February 28, 2019, and March 20, 2019. Accordingly, our recitation of the facts primarily focuses on those days.

¶ 6      After arraignment and several continuances, the case was called on January 16, 2019. Jackson informed the trial court he wanted "to proceed *pro se* and demand trial." Jackson said he had "been coming into court for almost half a year, and nothing has been done." He also said that he wanted to file a *pro se* "motion to squash [*sic*] arrest and dismiss charges." The court allowed Jackson to discharge his attorney and file his motion, and defense counsel returned the discovery materials in her possession, including police reports, to the State. The trial court advised Jackson that the State would tender discovery to him after making required redactions, which were expected to be completed by the next court date. The trial court informed Jackson that he could not make a demand for a speedy trial during the pendency of the motion, as they would "have to deal with" the motion first. The court explained that filing the motion "prevents you from making a demand of a speedy trial" and hearing the motion "will delay the case being tried." The trial court asked Jackson whether he understood, and he indicated he did. The trial court continued the case by agreement for a hearing on Jackson's motion.

¶ 7      When the case was next called, on February 28, 2019, the State indicated that redactions of the discovery materials was incomplete. As a result, the court informed Jackson that a hearing on his motion would not take place that day because the State could not give him the discovery

materials. Jackson responded, "I was planning on getting my discovery so I could check over my motion to make sure everything I got has been right."

¶ 8    The trial court clarified that Jackson's motion sought to quash arrest and suppress evidence and would not be heard until he had the discovery materials. When Jackson asked why, the trial court explained that if the police were called to court for a hearing on the motion, but he did not have the police reports, he would not "be ready to go." Jackson then asked, "[S]houldn't the discovery be turned over to me?" The trial court explained that it would be, but that the law provided for redaction of some information in the police reports. Jackson replied, "But that's hindering me from representing myself, your Honor. It's a violation." The court reiterated that the State would be redacting some information. Jackson responded, "But I came to court on January 16. It's February 28." The court acknowledged the dates, explained that its courtroom had 400 defendants and only three prosecutors, and sometimes paperwork did not get done quickly enough. The trial court said, "I'll bring you back in a couple of weeks. We'll get you the paperwork. Okay?" Jackson responded, "Yes, sir." The court continued the case by agreement to March 20, 2019. Asked, "Okay?" Jackson answered, "Yep."

¶ 9    On March 20, 2019, the trial court began, "So where are we with regards to turning over discovery? Do we have any videos he has to see?" The prosecutor answered that there were no videos. Still, the State had received a disk of laboratory notes with DNA results, along with a request from the laboratory that a confirmatory swab be obtained from Jackson. The prosecutor said she would prepare a motion for investigators to swab Jackson and would try to print out the laboratory notes. The trial court asked whether the prosecutor could print the notes that day. The

prosecutor said they could and indicated that the State had crime scene processing reports that could be tendered as well.

¶ 10    At this point, the trial court asked Jackson if he understood what was going on. He answered affirmatively. and said, "In regards to the motion, I would like to pull the motion and demand trial." The trial court confirmed with Jackson that he understood discovery remained incomplete. Jackson said he had been waiting for discovery for seven months and noted he would receive lab notes that day. The trial court informed Jackson that if the State answered ready, he would have to go to trial with "what you have, which puts you at kind of a disadvantage." He responded, "Well, I'd like to demand trial, sir."

¶ 11    The court passed the case. When it was re-called, the prosecutor tendered about 1,000 pages of the laboratory notes to Jackson, which she stated constituted about half of the information on the disk. And asked for a short date. Based on a calculation provided by the State, the trial court told Jackson that almost 100 days remained on the speedy trial term, and continued the case.

¶ 12    After that, Jackson filed a written demand for trial; the State several times several sought continues.

¶ 13    Jackson's trial began on June 10, 2019. The jury found Jackson guilty of residential burglary. and the trial court sentenced him to 18 years in prison.

¶ 14                                        Analysis

¶ 15    On appeal, Jackson contends that his conviction was obtained in violation of his statutory right to a speedy trial where he "convincingly attempted to assert his right to self-representation and proceed to an immediate trial." He argues that on February 28, 2019, and March 20, 2019, he reasserted his right to self-representation and requested the court consider his motion to quash

arrest. Still, the court ignored all his requests under the guise that he did not have the pertinent discovery. In addition, the State delayed redacting the police reports. He asserts that he withdrew his motion on March 20, 2019, and demanded trial even though the State had failed to tender the redacted police reports. He maintains that under these circumstances, the 20-days between February 28, 2019, and March 20, 2019, do not constitute delay attributable to him. As a result, he went to trial in 132 days, violating his right to a speedy trial.

¶ 16    As an initial matter, Jackson acknowledges he has forfeited his speedy trial claim because he did not raise it at trial or in a posttrial motion. See *People v. McKinney*, 2011 IL App (1st) 100317, ¶ 29. Nevertheless, he asserts that we may reach the issue: (i) because the forfeiture rule is relaxed when the trial judge's conduct is at issue, or (ii) under the second prong of the plain error doctrine.

¶ 17    First, we must to determine whether reversible error occurred. See *People v. Johnson*, 238 Ill. 2d 478, 490-91 (2010) (excusing forfeiture based on trial judge's conduct warranted only when court has overstepped its authority); *People v. Naylor*, 229 Ill. 2d 584, 602 (2008) (no plain error absent reversible error). Here, we find no error.

¶ 18    Under section 103-5(a) of the Code of Criminal Procedure of 1963, every person in custody "shall be tried by the court having jurisdiction within 120-days from the date he was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2018). The 120-day speedy-trial clock automatically begins once a defendant remains in custody pending trial. *People v. Phipps*, 238 Ill. 2d 54, 66 (2010). A "delay" in the speedy trial period occurs when either party or the trial court acts to move the trial date outside the 120-day window. *People v. Cordell*, 223 Ill. 2d 380, 390 (2006). Delay caused or contributed to by the defendant tolls the speedy-trial

period until the delay expires, at which point the period resumes running. *People v. Murray*, 379 Ill. App. 3d 153, 158 (2008). To prevent tolling, section 103-5(a) requires the defendant object to an attempt to place the trial date outside the 120-day period. *Phipps*, 238 Ill. 2d at 66.

¶ 19    The State has the duty to bring a defendant to trial within the 120-day statutory period, but the defendant bears the burden of establishing that the delays were not attributable to them. *Id.* at 158. A defendant delays when their acts cause or contribute to the postponement of trial. *Id.* at 158-59. Under the speedy trial statute, "Delay shall be considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2018). Section 103-5(a) does not mandate "magic words" constituting a demand for trial. Instead, it requires "some affirmative statement in the record requesting a *speedy* trial." (Emphasis in original.) *Phipps*, 238 Ill. 2d at 66. Whether a defendant's statutory right has been violated presents a question of law that we review *de novo*. *People v. McGee*, 2015 IL App (1st) 130367, ¶ 25.

¶ 20    We must decide whether the State or Jackson caused or contributed to the 20-day delay between February 28, 2019, and March 20, 2019. If attributable to the State, trial began in 132 days in violation of the Act.

¶ 21    Jackson contends that he "clearly objected to the continuance" that resulted in the 20-day delay. Jackson says: (i) he "objected" after the trial court stated that his motion could not be heard until he obtained the discovery materials; (ii) he asserted the delay hindered his right to self-representation and constituted a "violation"; and (iii) he referred to his earlier demand for trial when he said, "But I came to court on January 16. It's February 28." Also, the court "ignored [his] requests and strong-armed him into agreeing to continue the case from February 28, 2019, to

March 20, 2019." Further, according to Jackson, the delay caused by his filing of the motion to quash arrest should not be attributed to him because of the State's lack of diligence in redacting the police reports.

¶ 22    After reviewing the record, we find that the 20-day continuance was attributable to Jackson.

¶ 23    As mentioned, a demand for a speedy trial need not be in a particular form and must include "some affirmative statement in the record requesting a *speedy* trial." (Emphasis in original.) *Phipps*, 238 Ill. 2d at 66. On January 16, 2019, Jackson asserted that he wanted to demand trial but also to file a motion to quash arrest. The trial court allowed him to file the motion, explaining: (i) the motion would have to be dealt with first, (ii) the filing would prevent him from making a demand for a speedy trial, and (iii) proceeding on the motion would "delay the case being tried." Jackson indicated he understood. We agree with the State that this exchange between Jackson and the trial court demonstrates Jackson's awareness that pursuing the motion to quash would toll the demand for a speedy trial.

¶ 24    Next, on February 28, 2019, the trial court and the prosecutor began by discussing the redactions in the discovery materials. In response to the court's request for his input, Jackson said, "I was planning on getting my discovery so I could check over my motion to make sure everything I got has been right." The court told Jackson that his motion could not proceed until he had all the discovery materials, to which Jackson asked why. The court responded that Jackson would need the materials to "be ready to go" at a hearing on the motion.

¶ 25    Jackson asked, "If I'm defending myself, shouldn't the discovery be turned over to me?" The court answered affirmatively, and noted the law provided for redaction of some information in the police reports. Jackson responded, "But that's hindering me from representing myself, your

Honor. It's a violation." The court reiterated that some information would be redacted, and Jackson said, "But I came to court on January 16. It's February 28." In response, the court explained that it had a heavy caseload and paperwork was not always completed quickly enough. The court said Jackson would come back "in a couple of weeks," and get the paperwork. Jackson replied, "Yes, sir." The court added that the case was continued by agreement to March 20, 2019, and Jackson agreed.

¶ 26    In this court, Jackson argues that this exchange on February 28, 2019, demonstrates he "clearly objected to the continuance" to March 20, 2019, and, thus, the 20-days should not be attributed to him. We disagree.

¶ 27    The record shows that on February 28, 2019, Jackson said nothing indicating he no longer wished to pursue his motion and he was ready for trial. Instead, he explicitly stated he wanted the discovery materials so he could check his motion for accuracy. Jackson and the court then discussed discovery in the context of Jackson's motion. Jackson's follow-up comments—about redaction hindering him from representing himself and being a violation, and about the passage of time since his last court appearance—did not specifically reference the motion to quash or trial, much less a speedy trial. Moreover, Jackson's earlier request for trial on January 16, 2019, occurred before the filing of the motion to quash and the continuance at issue. This is not equivalent to an objection for section 103-5(a) purposes. See *Cordell*, 223 Ill. 2d at 391. Jackson did not object to the continuance to March 20, 2019, and, therefore, the 20-days between February 28, 2019, and March 20, 2019, are attributable to him.

¶ 28    In reaching this conclusion, *People v. Pearson*, 88 Ill. 2d 210, 215 (1981) does not persuade us. In *Pearson*, the defendant expressed his objection to a continuance stating, "I'm ready for trial,"

"Forget the motion," and "you [defense counsel] are not my attorney *** I'm ready for trial." *Id.* Our supreme court held the defendant clearly and convincingly attempted to assert his right to proceed to an immediate trial, and there was "no question but that the defendant was asserting his readiness to proceed." *Id.* In contrast to *Pearson*, Jackson made no statements on February 28, 2019, indicating he no longer wished to pursue his motion and was ready for trial. On the contrary, he explicitly said he wanted the discovery materials to check his motion's accuracy, and he and the court discussed discovery in the context of his motion.

¶ 29    Finally, Jackson argues that delay caused by his filing of a motion to quash arrest should not be attributed to him because the State's lack of diligence in redacting the police reports contributed to the delay. In general, delay stemming from a defendant's filing of a motion is properly attributable to the defendant for speedy trial purposes (*People v. Jones*, 104 Ill. 2d 268, 277, 280 (1984)), including the time necessary for the State to respond to the motion and for the court to hear and decide the issue (*People v. Erickson*, 266 Ill. App. 3d 273, 276 (1994)). Only in exceptional circumstances will a delay in ruling on a defense motion be attributed to the State. *People v. Bragg*, 277 Ill. App. 3d 468, 482 (1995).

¶ 30    Jackson argues exceptional circumstances exist as in *People v. Perkins*, 90 Ill. App. 3d 975 (1980). In *Perkins*, both the State and the defendant indicated that discovery had been completed as of the 117th day of the speedy-trial term. *Id.* at 978. But, on the 118th day, the day before trial, the State, for the first time, informed defense counsel that the defendant had made an inculpatory statement to the police. *Id.* at 979. The prosecutor told defense counsel: (i) he did not know the content of the alleged statement, (ii) he had not yet talked to all the police officers, and (iii) he was not prepared for trial. *Id.* This "forced" the defendant "to make a motion to suppress the statement

despite the possible impact on his speedy trial right." *Id.* A week later, the trial court denied the motion. *Id.*

¶ 31    On appeal, the defendant contended his right to a speedy trial had been violated (*id.* at 97) and this court agreed. We concluded that the filing of the motion could not be attributed to the defendant because the record demonstrated he was prepared to begin trial on the 117th day, and "only the State's inexcusable tardiness in completing discovery through the belated disclosure of an alleged statement of defendant precluded trial from beginning prior to the running of the term." *Id.* at 979-80. To charge the defendant with a tolling of the speedy trial clock in these circumstances, we explained, circumvents the statute's protection and violates the defendant's right to a speedy trial. *Id.* at 980.

¶ 32    We find *Perkins* distinguishable because unlike in *Perkins*, the State did not induce Jackson to file his motion due to "last-minute revelation" of incriminating evidence. See *id.* at 978-79. Instead, Jackson filed his *pro se* motion of his own volition near the beginning of the speedy trial term, after 30 days of delay attributable to the State.

¶ 33    As noted, in determining whether a continuance is attributable to a defendant, courts look to the circumstances surrounding the granting of the continuance. *People v. Gooding*, 61 Ill. 2d 298, 301 (1975). Jackson's election to proceed *pro se* when he filed his motion triggered two continuances so the State could redact information in the discovery materials. Given this context, the "exceptional circumstances" exception does not apply. See, *e.g.*, *Erickson*, 266 Ill. App. 3d at 276 ("This is not such an extraordinary situation that the delay in ruling on the motion should not be attributable to defendant.").

¶ 34    In summary, Jackson did not clearly and convincingly communicate on February 28, 2019, that he objected to continuing his motion (see *Pearson*, 88 Ill. 2d at 215) or that he wanted to abandon his motion and proceed to a speedy trial (see *Phipps*, 238 Ill. 2d at 66).

¶ 35    Affirmed.